BARRON, Circuit Judge. In 2014, a jury convicted Jose Latorre-Cacho (“Latorre”) of one count of conspiracy in violation of 18 U.S.C. § 1962, which is a provision of the Racketeer Influenced and Corrupt Organization (“RICO”) Act. He now appeals. Due to the portion of the jury instructions in which the District Court incorrectly described what constitutes “racketeering activity” under the Act, we vacate Latorre’s conviction and remand for further proceedings. I. In 2014, a multi-count, multi-defendant federal indictment in the District of Puerto Rico charged Latorre with RICO conspiracy in violation of 18 U.S.C. § 1962(d); conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841, 846 and 860; and conspiracy to possess firearms in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(o). Latorre went to trial on all three counts. A jury convicted him only of RICO conspiracy, which was listed as Count I of the indictment. The District Court then sentenced Latorre to a term of 120 months, to be followed by five years’ supervised release. 18 U.S.C. § 1962(d) makes it a crime to conspire to commit a RICO Act violation. Id. 18 U.S.C. § 1962(c) provides that it is unlawful under the RICO Act “for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise’s affairs through a pattern of racketeering activity or collection of unlawful debt.” Id. A separate provision of the statute defines what constitutes “racketeering activity” to include, among other conduct: “any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical.” Id. § 1961. That definition does not, however, include the commission of firearms offenses, or even the involvement with firearms, as “racketeering activity.” This last fact about the RICO Act’s definition of “racketeering activity” is a key component of one of Latorre’s challenges to his conviction on appeal. In particular, that challenge takes aim at a portion of the extensive instructions that the District Court gave the jury about what it had to find in order to convict Latorre of RICO conspiracy. In that portion of the instructions, the District Court, in the course of describing what constitutes “a pattern of racketeering activity,” twice incorrectly stated that “firearms” constitutes “racketeering activity.” Specifically, the District Court stated: To establish a pattern of racketeering activity as alleged in Count I of the indictment, the government must prove ,three elements .beyond • a reasonable doubt, . First, that the defendant agreed that a conspirator, which could include the defendant himself, did or would intentionally commit or cause or aid and abet'the commission of two or more of the racketeering acts of the types alleged in the indictment. Drug dealing, firearms, robberies, carjackings. [[Image here]] Later in these instructions, I will detail for you elements regarding each of these types of racketeering activities. But you know from the summary I have given you up to now that the types of racketeering activity are the ones I just mentioned a minute ago, narcotics distribution, robberies, and carjackings, and of course firearms. (Emphases added). On appeal, Latorre argues that his conviction must be overturned because of the mistaken instructions that “firearms” constitute “racketeering activity.” He notes in this regard that the government put forth extensive evidence of both the enterprise’s and Latorre’s involvement with “firearms,” and that Latorre testified-at trial that he had no sufficient connection to the enterprise’s racketeering activity (through firearms or otherwise) to be. found guilty of conspiring to commit a RICO Act violation. Latorre also presses three other challenges on appeal. He . argues that certain special interrogatories concerning drug quantity set forth on the verdict form were unduly suggestive. He contends that it was error for the District Court, after the jury told the District Court that it had reached a verdict and was called back into the courtroom, to have directed the jury to “complete” the.verdict form after informing the jury that “something is missing.” Finally, he argues -that the District Court erred in not including special interrogatories on the verdict form that would have required the jury to specify the “racketeering activity” that the jury found. Because we conclude that Latorre’s challenge to the jury instructions has merit, we do not reach his other .challenges. We thus both begin and end our analysis with the jury instructions issue. II. In a federal criminal trial, the Fifth Amendment’s guarantee of due process of law requires the government to prove beyond a reasonable doubt every element of the offense for which the defendant is charged. Thus, jury instructions may violate a defendant’s constitutional right to due process if they relieve the government of its obligation to meet that requirement. See Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004). At the same time, “not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process,” Id. (internal quotation and alteration omitted). A jury instruction thus violates the Constitution for failing to properly instruct the jury regarding the elements of an offense only when “there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.” Id. (internal quotation omitted). In this case, Latorre contends that the jury instructions permitted the-jury to return a verdict on the RICO conspiracy count, on a legally invalid theory of what constitutes “racketeering activity” by defining “racketeering activity” to include “firearms.” See Skilling v. United States, 561 U.S. 358, 414, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010) (explaining that “constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory”) (citing Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)). The government agrees that “racketeering activity” does not include “firearms.” Thus, our task is to. determine whether, after taking account of the District Court’s erroneous description of “racketeering activity,” the instructions in their “entirety— and in the context of the evidence—presented the relevant issues to the jury fairly and -adequately.” Sony BMG Entm’t v. Tenenbaum, 660 F.3d 487, 503 (1st Cir. 2011). Latorre concedes, however, that he did not object at trial to the portion of the jury instructions that he now contends rendered the instructions invalid. Thus, in undertaking- our inquiry into the import of the misstatements of law that the instructions contained regarding what constitutes “racketeering activity,” we review only for plain error. United States v. Prieto, 812 F.3d 6, 17 (1st Cir. 2016). Under this plain error standard, Latorre “faces the ‘heavy burden of showing (1) that an error occurred; (2) that the error was clear or obvious; (3) that the error affected his substantial rights; and (4) that the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings.’ ” Id. (quoting United States v. Riccio, 529 F.3d 40, 46 (1st Cir. 2008)). In general, we have explained that “[t]his multi-factor analysis makes the road to success under the plain error standard rather steep; hence, reversal constitutes a remedy that is granted sparingly.” United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014) (quoting United States v. Gelin, 712 F.3d 612, 620 (1st Cir. 2013)). And, consistent with that caution, we have emphasized that, even when a district court makes a clear or obvious error in instructing the jury, the third prong of the plain error standard still requires the defendant to-show that the “outcome of the case would likely have changed” had • the erroneous instruction not been given, United States v. Colon, 744 F.3d 752, 758 (1st Cir. 2014), or, put otherwise, that.it is reasonably probable that the clear and obvious error affected the result of the proceedings, see United States v. Dominguez Benitez, 542 U.S. 74, 81-82, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (citing United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Nevertheless, we also have made clear that, to satisfy this third prong of the plain error standard, the defendant need not “prove by a preponderance of the evidence that but for [the] error things would have been different," United States v. Rodriguez, 735 F.3d 1, 11-12 (1st Cir. 2013) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 84 n.9, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) (insertion in the original)). Finally, the fourth prong of the plain error standard imposes a distinct potential obstacle to a defendant successfully making an unpreserved challenge to a jury instruction’s erroneous description ■ of an element of an offense. This prong requires a defendant to show that the instructional error threatened the fairness, integrity, or public reputation of the judicial proceedings. United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014). And, we have made clear, judicial proceedings are not so affected if the evidence of the defendant’s guilt at trial is “overwhelming” and “essentially uncontroverted.” United States v. Cotton, 535 U.S. 625, 633, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (citing Johnson v. United States, 520 U.S. 461, 470, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)). III. Against this backdrop, the government seems to concede that, with respect to the first two prongs of the plain error standard, the District Court committed a clear and obvious error when it instructed the jury that “racketeering activity” includes “firearms.” The government argues, however,- that Latorre cannot show the kind of effect on his substantial rights that he must show in order to satisfy the third prong of the plain error standard. Rather, the government contends, the problematic references to “firearms” are best understood to be “isolated” and “fleeting mistakes,” and thus ones that cannot suffice to. demonstrate that there is a reasonable probability that, absent these mistakes, the outcome at trial would have been different.[1] The government also contends, albeit cursorily, that Latorre cannot meet his burden under the fourth prong of the plain error test. In explaining why we do not agree with the government, we first describe why we conclude that the misstatements of law that the oral instructions contained regarding “firearms” constituting “racketeering activity” are quite serious. We then explain why we are not persuaded by the government’s contention that the misstatements were adequately mitigated by other portions of the oral instructions that also referenced the types of conduct that constitute “racketeering activity.” Next, we explain why our precedent does not support the government’s contention that the written instructions ensured that the oral instructions, despite the misstatements that they contained, probably had no effect on the outcome of the trial. And, finally, we explain our reasons for concluding that, when considered in light of the evidence adduced at trial, the errors in the oral instructions were so likely to mislead the jury as to what conduct could constitute “a pattern of racketeering activity,” 18 U.S.C. § 1961, that it is reasonably probable that those misstatements impacted the outcome at trial and thus that La-torre has demonstrated plain error. A. Although the government characterizes the District Court’s misstatements regarding “firearms” constituting “racketeering activity” as “isolated” and “fleeting,” it is hard to credit that description just based on a review of the part of the instructions that contains the misstatements. The District Court in this part of the instructions expressly described “firearms” as “racketeering activity” not once, but twice. And the District Court did so in seemingly quite a considered fashion. The District Court emphasized that it would “detail for [the jury] elements regarding each of these types of racketeering activities”—-which activities the District Court expressly described as including “firearms”—“later in these instructions.” What is more, the District Court went on to inform the jury that, important as these follow-on “details” about “these types of racketeering activities” would be, “you know from the summary I have given you up to now that the types of racketeering activity are the ones I just mentioned a minute ago.” And, finally, the District Court pointed out that such racketeering activity “of course” included “firearms.” Thus, the legal mistake about the nature of the “pattern of racketeering activity” element was repeated, rather than isolated, and emphatic, rather than fleeting. The government does contend the District Court in making these misstatements was merely providing a general description of “racketeering activity.” By contrast, the government contends, when the District Court specifically described the racketeering activities allegedly engaged in by the enterprise at issue in this particular case, the District Court at that point did not erroneously state that “firearms” constituted “racketeering activity.” Instead, the District Court at that point listed only conduct that did qualify as “racketeering activity.” Thus, the government suggests, the jury was likely to focus on that proper part of the instructions rather than the erroneous one, as only the proper part was focused on the particular charge of RICO conspiracy that had been brought against Latorre. But, in fact, the problematic portion of the instructions did not offer merely a generalized account of “racketeering activity,” such that we may presume that a jury would have been inclined to discount that description in the face of another part of the instructions that did not repeat the error and that was more tailored to the charges in this particular case. The problematic portion of the instructions referenced only types of conduct—drug trafficking, robbery, carjacking and “firearms”—that the indictment tied to the particular enterprise with which Latorre was charged with conspiring. Thus, the District' Court in this part of the instructions appears to have been offering a description of “racketeering activity” that was itself tailored to Latorre’s case. And that fact makes it probable that the jury followed that part of the instructions, as the government appears to accept that the jury would not have been inclined to ignore an instruction from the District Court about the nature of “racketeering activity” that was specifically describing the nature of the offense that Latorre was charged with committing. B. Given how clearly the District Court instructed the jury that it could convict Latorre on an invalid legal theory of what constituted “racketeering activity,” La-torre’s challenge necessarily turns on whether, as the government contends, the rest of the instructions somehow sufficed to counteract that erroneous instruction. But, contrary to the government’s contention, we conclude that the instructions as a whole did not suffice to disabuse the jury of the misimpression about what it needed to find that had been created by the erroneous part of the instructions. For that reason, we conclude that there was a reasonable probability that the error—clear and obvious as it was—misled the jury about what it needed to find in order to convict Latorre. In arguing otherwise, the government points first to a portion of the oral instructions in which the District Court began by stating: “I will define for you what is racketeering activity. Racketeering activity is defined to include a variety, could be many, a variety of state crimes subject to imprisonment for more than one year, as well as a variety of Federal crimes subject to Federal indictment.” The District Court then went on to state that “[y]ou are instructed as a matter of law that drug trafficking, robbery, carjacking qualify as racketeering activities.” This part of the instructions would appear to provide the strongest support for the government’s contention that the misstatements, in context, were less concerning than they otherwise would seem to have been. After all, the District Court purported to define “racketeering activity” in this portion of the instructions and, in doing so, mentioned by name only types of conduct that are “racketeering activity.” But, this portion of the instructions did not come after—and thereby arguably make up for—the misstatements by the District Court in which it had named “firearms” as a type of “racketeering activity.” Rather, this listing of only types of conduct that.do in fact qualify as “racketeering activity5.’ preceded the incorrect description of “firearms” constituting such activity that came later. And, given how emphatic and seemingly considered the subsequent mistaken description was, it is reasonably probable that the jury would not,have ignored that mistaken description simply because it had earlier received the preceding description of “racketeering activity” that the government contends we must assume the jury privileged. Further supporting this conclusion is the fact that the' District Court did not at any point -in the supposedly curative precedent passage actually state that-theTist of qualifying racketeering activities that was being set forth was an exhaustive, as opposed to merely an illustrative, one. In fact, the sentence that immediately precedes the list suggests just the opposite, by stating that “Racketeering activity is defined to include a variety, could be many, a variety of state crimes subject to imprisonment for more than one year, as well as a variety of Federal crimes subject to Federal indict-ment.” (Emphasis added). It is thus hard to see how it is reasonably probable that, just because the jury first heard a general description of “racketeering activity” that stressed how broad that category of activity is, the jury would have ignored as wrong the District Court’s later and seemingly insistent instruction that a particular type of conduct—“firearms”—falls within that broad category. The governmént next points to a supposedly compensating statement in the oral instructions that, unlike the statement that we have just addressed, does follow the misstatements about “firearms.” But, while it may often make sense to presume that a jury gave more weight to a follow-on proper statement of- the law than to a prior, erroneous one, see United States v. Pennue, 770 F.3d 985, 990 (1st Cir. 2014), the context here does not permit us to do so. In the follow-on statement that the government points to here, the District Court explained for-the jury that it had to be unanimous as to the types of predicate “racketeering activity” that it found in order to render a guilty verdict on the RICO conspiracy count. In elaborating on that particular point of, law regarding the requirement of unanimity as it applies to the “pattern of racketeering activity” element, the District Court made no mention of firearms. Instead, the District Court referred only to types of conduct that do in fact qualify as “racketeering activity.” Specifically, the District Court explained the unanimity requirement by stating that: [Y]our verdict must be unanimous as to which types of predicate racketeering activity the defendants agreed would be committed. For example, at least two acts of drug trafficking, at least two acts of robbery, carjacking or any combination thereof. And you already know that the types of racketeering, activity charged are drug trafficking, robbery and carjacking. •There is a problem, however, with portraying this statement as if it-conflicted with the District Court’s earlier .statements that described “firearms” as “racketeering. activity.” In the- passage just quoted above, the District Court'was not purporting to define the type of conduct that constitutes “racketeering activity,” as the District Court had been purporting to do in offering the prior, erroneous description that named “firearms” as. a type of “racketeering activity.” Rather, the District Court was simply instructing the jury that it must unanimously find that the enterprise engaged in a particular predicate “racketeering activity” in order to convict Latorre for RICO conspiracy and thus that the jury could not convict him on the basis of having unanimously found only that the enterprise had engaged in some type of “racketeering activity,” with some jurors having different ideas than others of what that activity was. For that reason, when this portion of the instructions is considered- in conjunction with the District Court’s prior statements that “firearms” constitute “racketeering activity,” this portion of the instructions could quite comfortably be understood to have been merely providing some of the “details” about the elements of “racketeering activity” that the earlier portion of the instructions had expressly informed the jury it would soon receive. And, given that the earlier portion of the instructions had been quite insistent in instructing the jury that “racketeering activity” encompassed “firearms,” the nature of the-“correct” subsequent instruction is: such, that it is reasonably probable that the jury followed the emphatic but mistaken portion of the instructions. For, we do - not see on what basis we could simply assume that the jury would have ignored what it had been told in error—-that “firearms” was “of course” “racketeering activity”—when it had not been instructed (even impliedly) to do so. We note as well that, in setting forth the list of activities that qualify as “racketeering activity” in -the part of ..the instructions that described the need for unanimity, the District Court introduced the list with- the words “[f)or example.” For -this reason, too, it is reasonably probable that the jury would not have understood the list that then followed to have been an implicit instruction to consider no other conduct: as “racketeering activity,” including .even conduct such -as “firearms” that the District Court had expressly said the jury “of course” could . consider as “racketeering activity.” Indeed, if the District Court intended for this portion of the instructions to convey any such message, then it is not clear why the District Court used the words “for example.” Moreover, whatever the District Court’s intent may have been in instructing the jury as it did, the fact remains that it did use the introductory words “for example.” Thus, this feature of the supposedly curative - “correct” instruction further adds to the likelihood that ,the jury did just what we repeatedly have said that we must assume that juries do—namely, follow the instructions in a way that, if possible, makes them cohere rather than conflict. See Francis v. Franklin, 471 U.S. 307, 321 n.7, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (finding that a reasonable juror seeks “to make sense of’ arguably conflicting instructions); see also United States v. Olano, 507 U.S. 725, 740, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (“[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court’s instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them”) (citation omitted). Of course, the last sentence in the passage from the instructions quoted above does state that “you already know that the types of racketeering activity charged are drug trafficking, robbery and carjacking.” And this last sentence thus made no mention of “firearms.” But, each of the activities mentioned in that sentence is also mentioned in'the list of activities that is both set forth in the sentence that precedes it and that is introduced there by the words “for example.” A jury thus could quite reasonably have understood this portion of the instructions merely to have been illustrating a point about unanimity by identifying possible groupings of some—rather than all—of the “racketeering activity” relevant to Latorre’s case. In this respect, this portion of the instructions is easily read to have been doing nothing more than conveying some of the “details” about the “pattern of racketeering activity” element that the District Court had earlier expressly said that it would provide when it instructed the jury without equivocation that “racketeering activity” includes “firearms.” Finally, the government points to one other portion of the oral instructions that it contends conflicts with—and thereby likely renders unproblematic—the misstatements about “firearms” that came before. The government notes that the instructions expressly refer at one point to the indictment’s description of “racketeering activity,” and the government contends that the indictment made clear to the jury that “firearms” do not qualify as such an activity. Thus, the government argues, the portion of the instructions that directed the jury’s attention to the indictment (at least probably) served to disabuse the jury of whatever mistaken understanding of the law that the references to “firearms” might have engendered. Notably, however, this supposedly curative reference in the oral instructions to the indictment does not actually purport to instruct the jury to rely solely on the indictment’s description of “racketeering activity” to determine what conduct qualifies as such activity. Rather, the portion of the instructions that contains this reference instructs the jury about how to understand the import of the requirement that racketeering activities must be related to one another. So, once again, it seems reasonably probable—though, of course, not certain—that the jury would have thought the District Court was giving “details” about the “pattern of racketeering activity” element, which the District Court had earlier' described to the jury as one that could be satisfied in part through evidence of the enterprise having engaged in activity involving “firearms.” Moreover, in referencing the indictment, the District Court did not direct the jury’s attention to any particular portion of the indictment as the one that identifies “the types of racketeering activities described” therein. The absence of any such directive matters because, while there are a number of separately titled sub-sections in Count I of the indictment—which is the one that concerns RICO conspiracy—none of those sub-sections is actually entitled “Racketeering Activity.” Nor do the headings or any other words in the indictment make it obvious which subsection, if any, defines the universe of conduct that is alleged to constitute “racketeering activity.” To be sure, the subsection in the indictment entitled “Racketeering Conspiracy” does use the phrase “racketeering activity” and then goes on to list only qualifying conduct. By contrast, the subsection entitled “Means and Methods of the Conspiracy,” in listing various activities in which the “enterprise” is alleged to have engaged, does not use that phrase. But, significantly, the activities that are listed in that latter subsection also include, alongside “firearms,” activities that are “racketeering activity.” There is, therefore, a reasonable probability the jury would have thought that the listed activities in this subsection were all qualifying ones. After all, for that not to be the case, the jury would have had to have thought that the District Court had led the jury astray in earlier telling it orally in no uncertain terms that “firearms” was “of course” also “racketeering activity.” Further adding to the reasonable probability that the jury read the indictment to cohere rather than to conflict with the District Court’s earlier, erroneous instruction is the following fact about the indictment. The subsection entitled “Roles of the Defendants,” in which Latorre is specifically named, states that he “participated in various illegal activities of the enterprise, including robbery.” (Emphasis added). Considered in conjunction with the ambiguities in the other subsections of the indictment, that sentence fairly invites the jury to conclude that the District Court meant what it said when it earlier explained: “you know from the summary I have given you up to now that the types of racketeering activity are the ones I just mentioned a minute ago, narcotics distribution, robberies, and carjackings, and of course firearms.” (Emphasis added). In all events, the question is whether the oral instructions, taken as a whole, created a reasonable probability that the jury would have been misled about the conduct the government needed to prove to satisfy the “pattern of racketeering activity” element. And here, we think that the potential for the jury to have been so misled is substantial, notwithstanding that there were portions of the instructions that described the relevant law without misstating it. To be sure, human speech being what it is, slip ups in oral instructions are bound to occur, and jurors may be understood to have enough common sense to recognize them as such. For that reason, the due process guarantee is not necessarily violated just because a district court misstates the law at some points in the course of instructing a jury. See Middleton, 541 U.S. at 438, 124 S.Ct. 1830 (finding no due process violation because, only “a rare combination of extremely refined lawyerly parsing of an instruction, and extremely gullible acceptance of a result that makes no conceivable sense” would have led a jury to have been misled by the mistaken description of an element of an offense once the instructions were considered as a whole). But, by considering the context of the instructions as a whole, we have previously found the plain error standard to have been met notwithstanding that an arguably curative instruction was given following a clearly and obviously erroneous one. United States v. Delgado-Marrero, 744 F.3d 167, 190 (1st Cir. 2014) (finding that, in context, plain error standard was met even though government argued that special jury verdict and accompanying instructions cured the instructional defect arising from the omission of the reasonable doubt requirement for an element of the- offense). In this case, the context requires that same conclusion. For, given the peculiarly emphatic nature of the erroneous instruction and the fact that the rest of the oral instructions could quite comfortably be read to cohere with the District Court’s misstatement of the law, there is very good reason to be concerned that the jury was misled by what it was told by the District Court. See Smith v. Jenkins, 732 F.3d 51, 69 (1st Cir. 2013) (holding that we presume that a jury follows the court’s instructions, and acts according to its charge). C. Of course, the jury did also receive written instructions, and they contained no misstatements about what constitutes “racketeering activity.” The government thus contends that the written instructions, which also must be- considered in assessing the significance of the oral misstatements, suffice.to diminish the concern that the oral misstatements affected La-torre’s substantial rights. • . The government points in particular to Pennue, 770 F.3d at 990, as support for that conclusion. But Pennue is a very different case. There,' the district court, in conveying'the instructions orally, appeared' to have simply misread from the written instructions at one point by omitting a key wprd—namely “not”—such that the opposite of what was surely intended was said. See id. at 988-89. In finding no plain error from- what we described as that “slip of the tongue,” we did reference the written instructions, which both were correct and stated that the law in a way that could not be reconciled with the misstatement. Id. at 990-91. But, we did so only after examining the entirety of the instructions that the jury received, including the fact that the one incorrect oral instruction was “followed immediately by a correct [oral] instruction^]” Id. at 990. In fact, in- Pennue we expressly stated that “we would hesitate to rely on written instructions .alone as a basis for concluding that the jury was not likely to be misled by an incorrect oral instruction.” ¾ We thus do not find the government’s reliance on Pennue persuasive. As we have explained, the errors in this case were too seemingly considered to be dismissed as ones that a reasonable jury would have recognized to be—like the omission of the single word in Pennue—the product of a mere slip of the tongue. And that is especially so given that the rest of the oral instructions did not suffice to set the record straight by providing the jury accurate statements of the law that, in context, were likely to have been understood to have conflicted with the wrong ones. D. We also must consider the likely effect of the instructional error in light of the evidence that was adduced at trial. United States v. Stefanik, 674 F.3d 71, 76 (1st Cir. 2012). But, a review of the record does not show that the evidence adduced at trial was of a kind that would render the District Court’s notably insistent but still erroneous description of racketeering activity to be immaterial to the outcome at trial. As Latorre points out, there was substantial evidence presented to the jury regarding firearms, both as to the enterprise’s involvement with them and as to Latorre’s connections to firearms. In fact, the prosecutor in the government’s closing argument stated, that Latorre “was an armed seller and enforcer” and “sold a firearm” and, that members of the enterprise would “buy guns, bullets and drugs.” Thus, the instruction that “firearms” constituted “racketeering activity”—if followed—was hardly beside the point in La-torre’s case. Nor does the government make any record-based argument for overlooking the error in the oral instructions; the government relies instead solely on the contention that the face of the instructions reveals that, as a whole, they were not likely to mislead. See United States v. Castro-Taveras, 841 F.3d 34, 54 (1st Cir. 2016) (finding that government did not argue a particular claim and thus waived that argument).[2] We do recognize that, even if a jury instruction misleads the jury as to what it must find with respect to an element of the offense, that instruction may not affect the defendant’s substantial rights if there is “overwhelming evidence that the jury still would have convicted absent the error.” United States v. Colón Osorio, 360 F.3d 48, 52 (1st Cir. 2004). But, our review of the record reveals no basis for so concluding, given that the government emphasized at trial the ties between Latorre and the enterprise with respect to firearms in particular, that Latorre challenged those ties in his own testimony to the jury, and that he requested (unsuccessfully) special interrogatories on the verdict form as the specific predicate acts found. See Salinas v. United States, 522 U.S. 52, 65-66, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (holding that “[i]n some cases the connection the defendant had to,the alleged enterprise or to the conspiracy to further it may be tenuous enough so that his own commission of two predicate acts may become an important part of the'Government’s case.”) Nor does the government make any argument to the contrary. See Castro-Taveras, 841 F.3d at 54. Finally, given our reasons for finding the government’s arguments insufficient to show that Latorre’s substantial rights were not affected, we do not see how the fourth prong of the plain error standard precludes Latorre from demonstrating plain error here. Moreover, while the government does assert that Latorre cannot'satisfy that prong, it does’so in only one sentence and without offering any explanation as to why. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (referring to “the settled appellate rulé that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deeméd waived”). . E. In sum, the oral instructions in this case were most unusual. They set forth an invalid legal theory regarding what the government must prove as to a key element of the offense. They did so, moreover, in clear and considered terms by telling the jury, in effect, that it would be unreasonable to understand that element any other way. Even more unusually, no statement in the oral instructions adequately countered that confidently-expressed misstatement of the law. Rather, the other statements to which the government points in the oral instructions were each framed in ways that are comfortably read to cohere with—rather than to contravene—the District Court’s mistaken oral instruction. And, finally, the evidence adduced at trial reinforces our conclusion that the jury was likely misled. That evidence put in play the invalid description of the element of the offense that the District Court set forth orally. That evidence also was not so strong or uncontroverted as to render improbable the chance that juror confusion about whether “firearms” constitutes “racketeering activity” affected the verdict. Significantly, the government does not actually challenge the view that the plain error standard is met by a case with attributes such as those that we have just described this case as having. Rather, the government argues only that this case does not have those attributes. And the government bases that assertion solely on its contention that the erroneous, orally-conveyed statements were adequately countered by statements elsewhere in the oral instructions that did not contain the error, as well as by the written instructions. But, for the reasons that we have given, the notion that the other statements in the oral instructions conflicted with the incorrect ones is belied by the way that those “correct” parts of the instructions were phrased. And we have never held that written instructions alone, simply by not repeating an error, suffice to clear up confusion that a misstatement in oral instructions otherwise would cause. Thus, the premise for the government’s only argument against finding plain error is not supportable.[3] We should add that the evidence at trial—as well as the prosecutor’s closing argument—made the enterprise’s alleged involvement in firearms a central part of the case. Thus, these features of the case heighten our concern that the jury was misled. And, finally, there is one more feature of this case that causes concern— the plausibility of a jury thinking that, just as the District Court had said, “firearms” are “of course” racketeering activity. For, we cannot see why we should presume that lay persons would think it so implausible that Congress, in trying to stamp out organized crime, intended to target organized criminal enterprises that were involved with firearms, that the District Court must have erred in instructing the jury that “firearms” were “racketeering activity.” Thus, however rare hen’s teeth may be, this is the rare (though not unprecedented, see Delgado-Marrero, 744 F.3d at 190) case of an unpreserved challenge to a clear and obvious instructional error that meets the plain error standard. IV. For these reasons, we vacate Latorre’s conviction. . In effect, then, the government treats what it seems to concede to be the “clear or obvious” misstatement of the law concerning "firearms” as a basis for concluding that the first and second prongs of the plain error test have been met, such that we must then proceed to the third prong of the inquiry. At that step of the inquiry, as the government frames it, we then must evaluate whether that clear or obvious misstatement resulted in an instruction that, considered in context, was sufficiently likely to mislead the jury so as to affect, all things considered, the substantial rights of the defendant. This approach accords with the one that we have followed before in evaluating' jury instructions that contain a misstatement of the law. See United States v. Pennue, 770 F.3d 985, 990 (1st Cir. 2014). Therefore, we do not analyze here, under the second prong of the plain error test, whether the instructions as a whole were clearly or obviously misleading. Cf. United States v. Romero, 32 F.3d 641, 651-52 (1st Cir. 1994). We instead focus only on the question the government presses—whether the instructions as a whole, erroneous though a portion of them clearly was, affected the substantial rights of the defendant. We do note, however, that, on the facts of this case, we would find plain error under either approach, at least given the government's failure to make any record-based argument for concluding otherwise. . Advancing an argument that the government does not make in connection with the jury instructions, the dissent notes that La-torre was acquitted of the count charging him , with conspiracy to possess .firearms in violation of 18 U.S.C., § 924(c)(1)(A), as if that acquittal demonstrates that the erroneous instruction regarding ''firearms” was beside the point. But, with respect to that count, the indictment described the only crime that had been furthered as "drug trafficking,” and the jury instructions did so as well. Thus, the acquittal on this .count shows only that the jury acquitted Latorre of conspiracy to possess firearms in furtherance of drug trafficking. The acquittal does not show that the jury found that Latorre was not involved with ‘'firearms.” Consistent with this conclusion, we note that-the juty also acquitted Latorre of conspiring to possess narcotics with the intent to . distribute, which further suggests that the acquittal on the firearms conspiracy - charge may simply have resulted from the jury’s doubts about Latorre’s involvement with drugs rather than from doubts about his involvement with firearms. Thus, the acquittal to which the dissent points simply does not show that it is reasonably probable that, even if the jury was of the mistaken view that “firearms” is a "racketeering activity,” the outcome at trial was not thereby affected. And that fact may explain why the government itself, which surely knows the record well, does not press this point. . In discounting the probability of confusion in this case, the dissent consistently downplays the seriousness of the District Court’s errors as mere "ad-libs.” But the District Court did not tell the jurors to forget what they had been instructed from the bench and to rely solely on the instructions that had been given to them in writing. Rather, the District Court told the jury to use the written instructions as a reference in the event that they found it hard to "recollect” what they had been told orally. Thus, the fact that the District Court "ad-libbed” is itself the problem. Finally, the dissent repeatedly states that because "correct” instructions were given orally, only speculation suggests that the jury followed the incorrect ones. But we are obliged to read the instructions as a whole, and, in this case, each "correct” instruction, when so read, quite comfortably comports with rather than conflicts with the misstatements. Thus, only speculation supports the notion that the jurors did not presume that the District Court intended for its oral instructions to cohere, for ordinarily we assume that jurors have the common sense to do just that. Olano, 507 U.S. at 740, 113 S.Ct. 1770. And thus only speculation supports the view that it is not reasonably probable that the jurors took the District Court seriously when it told them that “firearms” "of course” constituted "racketeering activity.” See Franklin, 471 U.S. at 321, 105 S.Ct. 1965.