# United States Court of Appeals
## For the First Circuit

No. 20-1953

UNITED STATES OF AMERICA,

Appellee,

v.

DIOVANNI CARTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Allison D. Burroughs, U.S. District Judge]

Before

Howard, Chief Judge,
Barron, Circuit Judge,
and Singal, District Judge.*

Joshua L. Solomon, Barry S. Pollack, and Pollack Solomon Duffy
LLP were on brief, for appellant.
Karen Eisenstadt, Assistant United States Attorney, and
Nathaniel R. Mendell, Acting United States Attorney, were on brief,
for appellee.

December 2, 2021

---

* Of the District of Maine, sitting by designation.

**SINGAL**, **District Judge**.  A jury convicted defendant-appellant Diovanni Carter of conspiracy to commit Hobbs Act robbery, the robbery itself, and discharging and brandishing a firearm during and in relation to a crime of violence.  Carter appeals his convictions, claiming that the district court impermissibly admitted hearsay evidence and improperly instructed the jury on vicarious liability.  Carter also challenges his sentence as stemming from an erroneous application of the official-victim adjustment in United States Sentencing Guidelines § 3A1.2.  Finding no error, we affirm the convictions and sentence.

## I.

We first recite the facts relevant to Carter's appeal "in the light most agreeable to the verdict, consistent with record support."  United States v. Walker, 665 F.3d 212, 220 (1st Cir. 2011).  On January 26, 2019, Carter and three associates robbed a T-Mobile store in Brockton, Massachusetts.  One associate was Darius Carter ("Darius"), Carter's brother.  A second associate, Dennis Martin, would later cooperate with law enforcement and testify against Carter.  The group stole approximately $20,000 worth of hardware and $4,500 in cash from the store.  One stolen phone contained a GPS tracking device, which led the police to the group's getaway car.

A car chase with the police ensued.  According to the government and Martin's testimony, Carter handed one of his

- 2 -

associates a gun while driving the getaway vehicle and instructed his associates to shoot at the police. Two of the associates then shot at the pursuing cruiser. The car chase ended, and all four occupants of the vehicle fled on foot. Police located all of Carter's associates the same evening, but were unable to locate Carter himself. After five weeks, police found and arrested Carter. On the day of Carter's arrest, Darius called his parents from jail and indirectly implicated Carter in the robbery in a recorded conversation.

A grand jury indicted Carter on five counts: (1) conspiracy to interfere with commerce by robbery; (2) interference with commerce by robbery; (3) carrying, using, discharging, or brandishing a firearm in relation to a crime of violence; (4) possession of a firearm and ammunition by a felon; and (5) possession of a firearm by a felon.

At trial, the government played excerpts of Darius' recorded jailhouse call with his parents. The government also relied on two vicarious liability theories -- aiding and abetting liability under 18 U.S.C. § 2, and co-conspirator liability under Pinkerton v. United States, 328 U.S. 640 (1946) -- to argue that Carter was guilty of Count Three. A jury convicted Carter on Counts One, Two, and Three, but acquitted him of Counts Four and Five. The jury returned a special verdict form specifically finding that a firearm was (a) brandished and (b) discharged during

the robbery.

The district court sentenced Carter to 150 months of imprisonment on Counts One and Two, and 120 months on Count Three, to run consecutively.  This appeal followed.

## II.

Carter raises three issues before this Court.  He challenges all three of his convictions on the basis that the district court impermissibly admitted hearsay evidence in the recording of Darius' jailhouse call.  He also challenges his conviction on Count Three, averring that the district court's jury instructions erroneously stated the requirements of aiding-and-abetting and Pinkerton liability.  Separately, Carter requests that we vacate his sentence for the robbery and underlying conspiracy because the district court misinterpreted the applicable Sentencing Guidelines.

## A.

We turn first to the evidentiary objection.  Carter argues that the district court's introduction of Darius' jailhouse phone call implicating him in the robbery violated the hearsay prohibition in the Federal Rules of Evidence.[1]  The parties agree

---

[1]    The district court admitted the following statements:

"Whenever you all speak to that kid Dio, just let that n**** know, keep his f***ing mouth closed.  Don't even be talking . . . We already got the n****, co-d [Martin] snitching, so.  That's the, that's the most we need right now.  So that n**** don't need . . . He don't need to be running his mouth, telling

- 4 -

that the first two sentences of Darius' statements, consisting of an explicit instruction to tell Carter not to speak, are not hearsay and thus are not before us on appeal.  See United States v. Murphy, 193 F.3d 1, 5 (1st Cir. 1999).  Accordingly, we consider only the second part of the call that was admitted at trial.

Carter argues that the statements in question were straightforward hearsay because they were offered to prove the truth of the matter Darius asserted.  Alternatively, Carter alleges that the same statements constituted hearsay because they were offered to prove the truth of the matter they necessarily implied (a so-called "implied assertion").  See United States v. Diaz, 597 F.3d 56, 67 (1st Cir. 2010).  However, both of these arguments fail because Carter waived all hearsay objections before the trial court below.

Waiver is the intentional relinquishment or abandonment of a right.  See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002).  An argument is waived when a party "purposefully abandons it, either expressly or by taking a contrary position at trial."  United States v. Chen, 998 F.3d 1, 6 (1st Cir. 2021). "Once waived, a claim typically is 'dead and buried; it cannot thereafter be resurrected on appeal.'"  United States v. Tkhilaishvili, 926 F.3d 1, 11 (1st Cir. 2019) (quoting United

nobody about the case, nothing."  Appellant Add. at 16.

- 5 -

<u>States</u> v. <u>Eisom</u>, 585 F.3d 552, 556 (1st Cir. 2009)).

Carter waived his hearsay objections to the jailhouse call when his trial counsel stated "all I agree is it's not hearsay" at the final pre-trial conference. Gov. Add. at 23. At the conference, the district court began the relevant portion of the conversation with a reference to Darius' statements that followed the first two sentences: "I'm not sure about the comment about the co-defendant snitching." <u>Id.</u> at 20. Counsel for each side proceeded to discuss the co-conspirator exception to the hearsay rule, a ground for admission the district court rejected. <u>See</u> Appellant Add. at 12-13. After denying admission as a co-conspirator statement, the court stated, "you can have the comment, which is not admitted for the truth of the matter asserted." Gov. Add. at 22-23. Defense counsel stated, "I don't agree to anything, Your Honor . . . all I agree is it's not hearsay." <u>Id.</u> at 23. The court confirmed, "It's not hearsay. You want to make a relevance --" and defense counsel interrupted, "Yeah, it's not relevant." <u>Id.</u> Defense counsel then pivoted to an objection based on the statements' alleged irrelevance to the issue of Carter's guilt. Read in the context of the entire conversation, this statement by Carter's defense counsel is best understood to refer to the portion of the excerpt at issue here. Thus, Carter waived any hearsay objection to that portion of the call.

Carter's argument against waiver is unconvincing.

Carter disputes the "comment" to which the district court was referring in the pre-trial conference. As described above, though, the district court's conversation with counsel leaves little doubt about the relevant statement when examined as a whole. Defense counsel first stated that he agreed to nothing but then immediately ceded his hearsay objection. But the statement "I agree . . . it's not hearsay" is quite clear when read alongside counsel's immediate transition into an objection based on a different evidentiary principle, relevance. Were there any doubt, counsel failed to object to the court's confirmatory statement, "It's not hearsay."

We conclude that defense counsel's agreement operates to foreclose any revived hearsay objection on appeal, whether concerning direct or implied assertions. We add that even if the district court's decision to admit the contested statements was error, it was harmless beyond a reasonable doubt. See United States v. Sepulveda, 15 F.3d 1161, 1182 (1st Cir. 1993) ("Because the record offers every assurance that the errant statements did not affect the trial's outcome, they were harmless.").

A sizeable body of other evidence introduced by the government served to establish Carter's participation in the robbery. Martin, the co-defendant to whom Darius referred in his call as "already . . . snitching," identified Carter as a participant in his trial testimony. The government introduced

cell phone tower records placing Carter in the vicinity of the robbed T-Mobile store and showing him at a distance from the tower consistent with the location of the stolen phone's GPS tracker. The government also introduced a rental agreement for the escape vehicle signed by Carter, and two pieces of mail addressed to Carter that police found in the escape vehicle. We conclude that any impermissible inference of guilt drawn from Darius' statements was "a drop in the proverbial bucket," and thus decline to disturb Carter's convictions on this basis. Id.

**B.**

Focusing on Count Three, Carter urges us that the district court's jury instructions were incorrect or misleading as to the two theories of vicarious liability -- aiding and abetting liability and Pinkerton liability -- for a firearm offense under 18 U.S.C. § 924(c).[2] The district court's instructions are

---

[2]    The relevant excerpts of the jury charge are as follows:

"[U]nder 'Pinkerton,' the defendant can be found guilty if the government proves beyond a reasonable doubt that the defendant conspired to commit the underlying crime and knew that it was reasonably foreseeable that the underlying crime would be committed by a co-conspirator. For this offense, it must have been reasonably foreseeable to the defendant that a co-conspirator would use, carry, brandish, or discharge the firearm during the commission of the robbery.

. . .

[T]he defendant may be found guilty as an aider and abettor if the government proves beyond a reasonable doubt that the defendant took an affirmative step to help or cause the crime to be committed, and intended that the crime be committed by

- 8 -

reviewed for plain error because Carter did not raise a relevant objection to them below.  See United States v. Latorre-Cacho, 874 F.3d 299, 303 (1st Cir. 2017).

Under the plain-error standard, Carter "faces the heavy burden of showing (1) that an error occurred; (2) that the error was clear or obvious; (3) that the error affected his substantial rights; and (4) that the error also seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id. (quoting United States v. Prieto, 812 F.3d 6, 17 (1st Cir. 2016)) (internal quotation marks omitted).  "[T]he plain error hurdle, high in all events, nowhere looms larger than in the context of alleged instructional errors."  United States v. Rivera-Carrasquillo, 933 F.3d 33, 48 (1st Cir. 2019) (quoting United States v. Paniagua-Ramos, 251 F.3d 242, 246 (1st Cir. 2001)) (internal quotation marks omitted).  An allegedly flawed jury instruction is viewed not in isolation, but in context within the entire charge.  See  United States v. Pennue, 770 F.3d 985, 990 (1st Cir. 2014).  Where, as here, a defendant alleges that the jury instructions were ambiguous or confusing, we ask whether "the instructions as a whole . . . adequately explain the law without

---

another . . . To find the defendant guilty of aiding and abetting the crime of using, carrying, brandishing, or displaying [sic] a firearm during and in relation to a crime of violence, the government must prove that the defendant knew the firearm would be used, carried, brandished, or discharged . . . during the commission of the crime of violence."  Appx-1314.

confusing or misleading the jury." United States v. Troy, 618 F.3d 27, 33 (1st Cir. 2010).

The district court's alleged fault here was a failure to instruct the jury unambiguously on the issues of advance knowledge under 18 U.S.C. § 2 and of reasonable foreseeability under Pinkerton. We reject both arguments, finding that the district court correctly instructed the jury on the requisite mens rea for both forms of vicarious liability, as the instructions properly conveyed the substantive legal content and were not confusing or misleading in context.

The mens rea generally required of an aider-and-abettor under 18 U.S.C. § 2 is intent that the crime be committed. See Rosemond v. United States, 572 U.S. 65, 76 (2014). Additionally, when a defendant "actively participates in a criminal scheme knowing its extent and character," he "intends that scheme's commission." Id. at 77. Put otherwise, advance knowledge may satisfy the intent requirement in the aiding-and-abetting context. Carter's counsel conceded at oral argument that the district court's description of aiding-and-abetting liability in the abstract adequately covered this principle. See Appx-1314.

We have accordingly held that to be guilty of aiding and abetting the offense of brandishing a firearm during a Hobbs Act robbery, the government must prove that an alleged aider and abettor knew to "a practical certainty" that a firearm would be

- 10 -

brandished.  United States v. López-Soto, 960 F.3d 1, 13 (1st Cir. 2020) (quoting United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995)) (internal quotation marks omitted).  The district court correctly restated this law to the jury when it explained that the jury could find Carter to have aided and abetted a section 924(c) offense only if it found that he "knew the firearm would be used, carried, brandished, or discharged."  Appx-1314.[3]

Carter claims that aiding-and-abetting liability for a firearm discharge requires equivalent advance knowledge.  We acknowledge the government's argument that such knowledge may not be required.  See Dean v. United States, 556 U.S. 568, 577 (2009)

---

[3]    We note that our invocation in López-Soto of knowledge "to a practical certainty" corresponds to a conventional understanding of "knowledge" that future events will come to pass. See United States v. Powell, 929 F.2d 724, 726 (D.C. Cir. 1991) ("Given the imperfection of human knowledge, [practical certainty] is the equivalent of knowledge; an accomplice 'knows' an act will happen if he is 'practically certain' it will.") (cited favorably in United States v. Torres-Maldonado, 14 F.3d 95, 103 (1st Cir. 1994)).

Our precedent distinguishes "practical certainty" from a lower threshold of constructive knowledge.  Compare United States v. Sanborn, 563 F.2d 488, 491 (1st Cir. 1977) ("[T]o convict an aider and abettor of [aggravated robbery] we think the Government must show that the accomplice knew a dangerous weapon would be used or at least that he was on notice of the likelihood of its use.") (emphasis added), with United States v. Spinney, 65 F.3d 231, 236 (1st Cir. 1995) ("[T]he Sanborn court's formulation of the shared knowledge requirement . . . stands in marked contrast -- almost as point and counterpoint -- to the 'practical certainty' formulation that courts have developed for assessing the shared knowledge requirement applicable to aiding and abetting firearms charges brought under 18 U.S.C. § 924(c).").

(concluding that, for principals, "[t]he 10-year mandatory minimum applies if a gun is discharged in the course of a violent or drug trafficking crime, whether on purpose or by accident."). We nevertheless have no occasion to resolve this issue today, as the district court instructed the jury that aiding-and-abetting liability for a firearm discharge does require advance knowledge. If an accidental discharge imposes liability on an aider-and-abettor, the error in the district court's instruction favored the defendant and thus is no ground for reversal.

Carter also argues that the district court's instructions to the jury on foreseeability under Pinkerton were deficient. Liability as a co-conspirator under Pinkerton requires the government to show the defendant had not advance knowledge, but the less stringent threshold of reasonable foreseeability. See United States v. Vázquez-Castro, 640 F.3d 19, 24 (1st Cir. 2011). Thus, the government had to prove it was reasonably foreseeable to Carter that a firearm would be brandished or discharged to find him liable under Pinkerton for brandishing or discharging, respectively. The district court appropriately noted that Pinkerton liability attaches when a defendant conspires to commit a crime and it is reasonably foreseeable that the crime will be committed by a co-conspirator. As Carter conceded at oral argument, these instructions in the abstract were correct. We are unable to discern how, when applied to the specific acts giving

- 12 -

rise to a section 924(c) violation, the district court's instructions became incorrect. We thus hold that the instructions were not erroneous.

Carter fails to persuade us that the district court's use of the disjunctive "or" confused or misled the jury. The district court explained that federal law punishes "the crime of brandishing, discharging, using, or carrying a firearm during and in relation to a crime of violence." Appx-1312. After properly explaining Pinkerton liability in the abstract, the court explained that in context the jury would be required to find that the defendant could reasonably foresee that a "co-conspirator would use, carry, brandish, or discharge the firearm." Appx-1314. The court's instructions as to aiding-and-abetting liability similarly listed the four predicate acts under section 924(c) using "or." Appx-1315. As the government notes in its briefing, it is natural to understand the reasonable foreseeability or advance knowledge of each act as corresponding with the eventual commission of the relevant act.

Nor do we think the district court's reference to a section 924(c) offense as "the crime" in the singular was confusing or misleading. Section 924(c) penalizes four distinct acts: carrying, using, brandishing, and discharging. To be punished under the statute, a defendant need only commit one act. The district court's description of "the crime" was thus quite clear.

- 13 -

To use the plural form "the crimes" instead would cause greater confusion than the instructions given could have produced. In sum, when juxtaposed with the district court's abstract expressions of Pinkerton and aiding-and-abetting liability, the applied instructions clearly explained the relevant law.

Though the district court once misstated one of the correct verbs giving rise to a penalty under 18 U.S.C. § 924(c), such a "lapsus linguae" does not rise to the level of reversible error. Pennue, 770 F.3d at 987. Once in instructing the jury, the district court substituted the term "displaying" for "discharging." Appx-1314-15. This misstatement was not prejudicial error because the context of the instructions as a whole made abundantly clear the meaning of the instruction. On multiple other occasions, the district court correctly gave the list of section 924(c) predicates. See Appx-1312, 1314, 1317, 1318. Under these circumstances, we cannot conclude that the jury was misled by the district court's single use of "displaying."[4]

Because the district court correctly instructed the jury on the two relevant theories of vicarious liability for a violation of section 924(c), we affirm Carter's conviction for that offense.

---

[4] The other aspects of the jury instructions that Carter contests on similar grounds likewise fail to meet the plain-error hurdle.

- 14 -

## c.

The final issue in Carter's appeal is his claim that the district court incorrectly calculated the total offense level for his robbery-related offense group by including the official-victim adjustment that appears at U.S.S.G. § 3A1.2(c)(1). Because the district court's decision to include the adjustment was based on its legal interpretation of the Sentencing Guidelines, we review that decision de novo. See United States v. Carrero-Hernández, 643 F.3d 344, 349 (1st Cir. 2011).

Under U.S.S.G. § 2B3.1, the base offense level for Carter's grouped Hobbs Act robbery offenses (conspiracy and robbery itself) is 20. The district court added six points to this offense level by applying U.S.S.G. § 3A1.2(c)(1), which permits such an addition when the victim of the offense is a law enforcement officer. In this case, the relevant victim was one of the police officers targeted by Carter's associates during the post-robbery car chase.

Carter takes the position that application of the adjustment is barred by Application Note 4 to U.S.S.G. § 2K2.4, the Sentencing Guideline corresponding with Carter's firearm offense.[5] Note 4 prohibits the application of "any specific offense characteristic for possession, brandishing, use, or

---

[5] Note 4 is also known as "Amendment 599," the name under which the Sentencing Commission promulgated the relevant text.

discharge of an explosive or firearm" when a defendant is also sentenced for an underlying offense (here, the Hobbs Act robbery). When calculating a defendant's guideline sentencing range, a district court is obliged to give "controlling weight" to Sentencing Guideline application notes unless they are "plainly erroneous or inconsistent with the [Guidelines]." Stinson v. United States, 508 U.S. 36, 45 (1993) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)) (internal quotation marks omitted). Ordinary principles of statutory interpretation apply to terms used in Sentencing Guideline application notes. Cf. United States v. Luna-Díaz, 222 F.3d 1, 3 (1st Cir. 2000).

The district court did not err in applying the official-victim adjustment because "specific offense characteristic" is a term of art referring to modifications that appear in Chapter Two of the Guidelines, alongside offense-specific base offense levels. For example, the Guideline for robbery provides a base offense level of 20, to which increases or decreases may be made if any "specific offense characteristics" apply. See U.S.S.G. § 2B3.1(a), (b). In contrast, Chapter Three, Part A -- where the official-victim adjustment is found -- contains adjustments to offense levels that "may apply to a wide variety of offenses." U.S.S.G., ch. 3, pt. A, introductory commentary.

The remainder of Note 4 provides context that further supports a reading of "specific offense characteristic" as meaning

- 16 -

an offense-level modification found in Chapter Two. The second sentence of the Note states "[a] sentence under this guideline accounts for any explosive or weapon enhancement for the underlying offense of conviction, including any such enhancement that would apply based on conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)."

Carter takes this mention of section 1B1.3 to mean that, because the section specifies that particular conduct is relevant to both Chapters Two and Three, Note 4 rules out modifications that appear in both Chapters. Carter's understanding of Note 4 is inverted. Note 4's second sentence explains that U.S.S.G. § 2K2.4 already accounts for <u>weapon</u> enhancements -- that is, the "possession, brandishing, use, or discharge of an explosive or firearm." The official-victim adjustment applies not because the defendant used an explosive or weapon, but rather because the defendant targeted a particular type of person: a law enforcement officer. Insofar as the Guidelines penalize separate aspects of the same conduct differently, this result is neither surprising nor impermissible. See <u>United States</u> v. <u>Fiume</u>, 708 F.3d 59, 61 (1st Cir. 2013) ("Multiple sentencing adjustments may derive from the same nucleus of operative facts while nonetheless responding to discrete concerns. Thus, in the absence of an express prohibition, this court routinely has permitted a single underlying fact to be used more than once when that fact bears

upon two separate sentencing considerations.") (internal quotation marks and citations omitted).

Other uses of the term "specific offense characteristic" within the Guidelines confirm that it refers to Chapter Two calculations, not adjustments in Chapter Three. The term appears verbatim numerous times in Chapter Two as a source of substantive sentencing guidance, yet is absent from Chapter Three but for references to other sections that stand in contrast to "adjustments" in Chapter Three. See, e.g., U.S.S.G. § 2A1.5(b) ("Specific Offense Characteristic"); id. § 2A2.1(b) (same in plural); id. § 2A2.2(b) (same); id. § 3D1.3 commentary n. 3 ("Determine whether the specific offense characteristics or adjustments from Chapter Three, Parts A, B, and C apply[.]").

Likewise, two of the "General Application Principles" that govern the Guidelines as a whole reflect the premise that "specific offense characteristics" are found in Chapter Two. The Guidelines' "Application Instructions" require first that a district court "[d]etermine the base offense level and apply any appropriate specific offense characteristics . . . in the particular guideline in Chapter Two in the order listed." U.S.S.G. § 1B1.1(a)(2). Only then should the court "[a]pply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three." Id. § 1B1.1(a)(3). Neighboring Guideline § 1B1.3, titled

- 18 -

"Relevant Conduct," distinguishes between "specific offense characteristics . . . in Chapter Two" and "adjustments in Chapter Three."

The text and context of Note 4 to U.S.S.G. § 2K2.4 leave us with little doubt that it does not bar application of the official-victim adjustment at U.S.S.G. § 3A1.2(c)(1). Decisions of our sister circuits are in accord with this conclusion. See United States v. Dougherty, 754 F.3d 1353, 1360 (11th Cir. 2014); see also United States v. Barnes, 791 Fed. App'x 512, 518 (6th Cir. 2019). For these reasons, the district court did not err in its legal determination that the adjustment was permissible. Finding no error in the district court's Sentencing Guideline calculation, we affirm Carter's sentence for his grouped Hobbs Act robbery offenses.

## III.

For the reasons stated above, Carter's convictions and sentence are

**Affirmed**.