# United States Court of Appeals
## For the First Circuit

No. 17-1688

UNITED STATES OF AMERICA,

Appellee,

v.

JONATHAN GONZÁLEZ-BARBOSA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Barron, Circuit Judges.

Marie L. Cortés Cortés for appellant.
Antonio L. Pérez-Alonso, Assistant United States Attorney,
with whom Rosa Emilia Rodríguez-Vélez, United States Attorney,
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and Francisco A. Besosa-Martínez, Assistant
United States Attorney, were on brief for appellee.

April 8, 2019

**HOWARD**, **Chief Judge**.  Appellant Jonathan[1] González-Barbosa appeals his incarcerative sentence of 97 months, claiming that the district court erred in calculating his Criminal History Category under the Sentencing Guidelines, because a prior conviction was "relevant conduct" and therefore not for an offense that was separate from his present conviction.  González also challenges his sentence as procedurally unreasonable based on sentence disparities and an inadequate explanation by the judge.

Discerning no error by the district court, we affirm the sentence.

### I. BACKGROUND

In 2010, González was indicted along with twenty-seven others for conspiring to possess with intent to distribute controlled substances within 1000 feet of the Columbus Landing Public Housing Project in Mayaguez, Puerto Rico, in violation of 21 U.S.C. §§ 846 and 860.  The indictment listed González as a seller in the conspiracy, which lasted between 2002 and 2010.  González pled guilty and was sentenced to 60 months of imprisonment followed by 8 years of supervised release.

While serving his supervised release term, González was arrested again in July 2016.  This time, he and thirty-nine others

---

[1] Parts of the record, including the 2016 indictment and the change of plea and sentencing hearing transcripts, refer to the appellant as "Johnatan González-Barbosa."

- 2 -

were indicted for violations of § 846 and other crimes between 2010 and 2016. These other crimes included aiding and abetting in the possession with intent to distribute cocaine base, cocaine, and marijuana within 1000 feet of the Columbus Landing Public Housing Project, as well as conspiracy to possess firearms in furtherance of a drug trafficking offense. Again, González pled guilty.

Under the plea agreement, González was to be held responsible for at least 500 grams but less than 2 kilograms of cocaine. He also admitted to acting as a drug point owner and a runner in the conspiracy. The parties agreed that he would be assigned a base offense level (BOL) of 24, as well as a two-level enhancement for protected location, a two-level enhancement for a leadership role in the offense, and a three-level reduction for acceptance of responsibility for a total offense level (TOL) of 25. As provided in the Sentencing Guidelines, González's guideline sentencing range (GSR) would be determined by taking his TOL and his Criminal History Category (CHC) and plotting them on the guidelines table. The plea agreement made no stipulation as to González's CHC, but made a joint recommendation of 72 months' imprisonment "if Defendant's CHC is I to III."

The Presentence Investigation Report (PSR) prepared by the United States Probation Office mirrored the plea agreement's guidelines calculation, but added a two-level enhancement for the

foreseeable possession of a firearm during the offense, as provided by U.S.S.G. § 2D1.1(b). The PSR therefore assigned González a TOL of 27. With respect to González's CHC, the PSR added three points for his prior conviction relating to the 2002-2010 conspiracy and two points because the instant offense was committed during a term of supervised release. Consequently, the PSR recommended a CHC of III. With a TOL of 27 and CHC of III, the PSR calculated the GSR to be 87 to 108 months.

González objected to the PSR's firearms enhancement, arguing that the TOL should be 25 as stipulated in the plea agreement. He also asserted that his participation in the conspiracy was limited, because he was incarcerated for most of the duration of the 2010-2016 conspiracy. González made no other objections to the PSR. The U.S. Probation Officer rejected González's objections and left the PSR sentencing calculations unchanged.

At González's sentencing hearing, the district court first imposed a sentence of 18 months' imprisonment for the violation of supervised release. Turning to the sentence for the 2010-2016 conspiracy, the court noted that it had reviewed the plea agreement, the PSR, González's sentencing memorandum, and his objection to the firearms enhancement. After the court heard arguments about the firearms enhancement and the recommended sentence of 72 months, it accepted the PSR-recommended guideline

sentencing range of 87 to 108 months' imprisonment. After discussing the various § 3553(a) factors, the district court imposed a sentence of 97 months' imprisonment to be served consecutively to González's 18-month revocation sentence. This appeal followed.

## II. ANALYSIS

Before us, González argues that the district court committed procedural error when it calculated the GSR to be 87 to 108 months. González claims that it was error to count his prior conspiracy conviction in calculating his CHC because the prior conviction was part of the same common scheme or plan as the instant conviction and therefore was "relevant conduct" under U.S.S.G. § 1B1.3. He further contends that the district court did not adequately state on the record why it chose to sentence him above the 72 months recommended by the plea agreement and that the court again erred procedurally by giving him a disparately higher sentence compared to some of his co-defendants.[2] Each of these arguments is futile.

As a threshold matter, the government maintains that because González did not state these objections before the district court, they should be deemed waived and therefore unreviewable.

_____

[2] Although González asserts that he is making a substantive challenge to his sentence, all of his arguments are procedural, and, regardless, his challenge would fail even under an abuse of discretion review.

In our circuit, "[a] party waives a right when he intentionally relinquishes or abandons it." United States v. Orsini, 907 F.3d 115, 119 (1st Cir. 2018) (alteration in the original) (quoting United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002)). This is distinct from when a party fails to timely assert a right, which results in a forfeiture. Rodriguez, 311 F.3d at 437. Forfeited issues can be reviewed for plain error. Id. González's challenges fail under either standard.

To prevail on plain error review, González must show (1) that an error occurred, (2) which was clear or obvious, and which both (3) affected his substantial rights, and (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings. United States v. Fuentes-Echevarria, 856 F.3d 22, 25 (1st Cir. 2017). We review each of his challenges in turn.

**A.**

González first argues that the 2002-2010 conspiracy was part of the instant offense and therefore his sentence for that conspiracy should not have counted as a "prior sentence" under the Sentencing Guidelines. See U.S.S.G. § 4A1.2 (2016). Under Application Note 1 to § 4A1.2, "'[p]rior sentence' means a sentence imposed prior to sentencing on the instant offense, other than a sentence for conduct that is part of the instant offense." § 4A1.2 n.1. It further states that "[c]onduct that is part of the instant

- 6 -

offense means conduct that is relevant conduct to the instant offense under the provisions of §1B1.3." Id. That provision, in turn, states that "relevant conduct" determinations shall be based on:

> [A]ll acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.] U.S.S.G. § 1B1.3(a)(1).

González asserts that because the 2002-2010 conspiracy involved the same modus operandi, location, co-conspirators, dates, and statute as the 2010-2016 conspiracy, his prior offense was "relevant conduct" to the instant offense and his sentence for the prior conviction should not qualify as a "prior sentence" for purposes of his CHC calculation.

However, González's darts are blunted by § 4A1.2(a)(2), which instructs that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." González does not deny that his offenses were separated by an intervening arrest, and he thus cannot escape the clear command of this provision. He was arrested in 2010 for his participation in the 2002-2010 conspiracy. After his release from imprisonment in 2014, he then engaged in additional criminal conduct. Indeed, at

- 7 -

his second sentencing, González emphasized that his participation in the 2010-2016 conspiracy did not commence until after he began his supervised release. Moreover, as the government points out, Application Note 5(C) of § 1B1.3 provides abundant clarity:

> Example[]: (1) The defendant was convicted for the sale of cocaine and sentenced to state prison. Immediately upon release from prison, he again sold cocaine to the same person, using the same accomplices and modus operandi. The instant federal offense (the offense of conviction) charges this latter sale. In this example, the offense conduct relevant to the state prison sentence is considered as prior criminal history, not as part of the same course of conduct or common scheme or plan as the offense of conviction.

The similarity between this example and the facts here is unmistakable. There being no question that González received sentences for offenses that were separated by an intervening arrest, his first sentence was correctly counted as a prior sentence.

**B.**

González next argues that the district court did not adequately explain its reasoning for the sentence in open court as required by 18 U.S.C. § 3553(c). See United States v. Robles-Alvarez, 874 F.3d 46, 52 (1st Cir. 2017) ("A sentencing court commits procedural error, and thus abuses its discretion, by, among other things, 'failing to adequately explain the chosen sentence.'" (quoting Gall v. United States, 552 U.S. 38, 51 (2007))). The adequacy of the sentencing court's explanation

- 8 -

depends heavily on context. See Rita v. United States, 551 U.S. 338, 356 (2007). The district court is required to "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Id. "A sentence that falls inside a properly calculated guideline sentencing range requires lesser degree of explanation than those that fall outside the [GSR]." United States v. Crespo-Rios, 787 F.3d 34, 39 (1st Cir. 2015) (internal quotation marks and alterations omitted).

Here, after hearing arguments from both sides regarding the recommended sentence, the district court stated that it was accepting the guideline range recommended in the PSR. This meant that the court was beginning with a GSR of 87 to 108 months. The court then proceeded to discuss its consideration of the § 3553 factors, including González's age, dependents, employment, education, health, upbringing, lack of a father-figure, history of drug use, life goals, criminal history, and likelihood of recidivism. The court took particular note of the fact that after González's release following his first sentence, instead of following his mother to Florida, he took over her former role as a leader in the drug trafficking conspiracy at Columbus Landing. The court also noted that González had been illegally accessing phones or similar devices while in prison, as evidenced by his

- 9 -

social media postings at the time.  Based on these factors, the district court imposed a sentence of 97 months.

González contends that the court needed to explicitly state why it was imposing a "variant" sentence above the 72 months recommended by the plea agreement.  But the sentence imposed was not variant; it was right in the middle of the GSR, as explained clearly by the district court.  The district court also clearly explained the reasoning behind the GSR it was applying when it opted to include the firearms enhancement in the TOL.  The district court's explanation of the sentence was sufficient.  See United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006) ("While the court ordinarily should identify the main factors upon which it relies, its statement need not be either lengthy or detailed.").  González has shown no error in the district court's explanation.

## C.

Lastly, González argues that his sentence is procedurally unreasonable because he was given a longer sentence than certain co-defendants who were also charged in both conspiracies.  González specifically identifies two co-defendants, Roderick Perez-Gonzalez and Axel Bolta-Diaz.  Each of them pled guilty to participating in the instant conspiracy and received sentences of 72 months. This disparity, González argues, is purely arbitrary and therefore error.

Judges are directed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). While "this provision is primarily aimed at national disparities," United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015) (international quotation marks omitted), it also "permits consideration of disparities among co-defendants." United States v. Robles-Alvarez, 874 F.3d 46, 52 (1st Cir. 2017). Courts frequently reject disparity claims, however, when appealing defendants ignore material differences between their own circumstances and those of their co-defendants, Reyes-Santiago, 804 F.3d at 467.

By his own admission, González's circumstances materially differ from those of the highlighted co-defendants. Although it is true that each was charged in the instant case and in the prior conspiracy, Bolta-Diaz was not assessed a leadership enhancement and Perez-Gonzalez was not assessed a firearms enhancement. González received both enhancements. In sentence disparity claims, a defendant must compare apples to apples. United States v. Mateo-Espejo, 426 F.3d 508, 514 (1st Cir. 2005). Without showing appropriate comparators, Gonzalez's disparity challenge cannot proceed.

González argues further that his sentence enhancements were disparately and unreasonably assessed by the district court,

when the underlying conduct engaged in by his co-defendants was no different than his. In particular, González posits that the district court's rationale for assessing a two-point firearms enhancement was that he had returned to the conspiracy as a drug point owner, yet the court failed to apply the same enhancement to Perez-Gonzalez, who was also a drug point owner. The district court, however, noted that González's Probation Officer had recommended the enhancement, that Gonzalez was "one of the two main leaders" of the conspiracy along with his brother, and that González's "right-hand man," his brother, had been photographed carrying firearms. Additionally, González concedes that the record contains no information regarding Bolta-Diaz's or Perez-Gonzalez's criminal histories. Neither does the record contain their sentencing hearing transcripts. Because González does not show that there was an arbitrary disparity between him and a similarly-situated co-defendant that was clear or obvious, this appeal cannot succeed.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the sentence imposed by the district court.