# United States Court of Appeals
## For the First Circuit

Nos. 17-1663, 17-1668, 17-1679, 17-1680

UNITED STATES,

Appellee,

v.

CARLOS ENRIQUE LÓPEZ-SOTO, A/K/A CHEMITO,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Dominguez, U.S. District Judge]

---

Before

Barron, Lipez, and Dyk,[*]
Circuit Judges.

---

German A. Rieckehoff, with whom Carlos Enrique López-Soto, pro se, was on brief, for appellant.
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, were on brief, for appellee.

---

[*] Of the Federal Circuit, sitting by designation.

May 21, 2020

**DYK**, <u>**Circuit Judge**</u>. Carlos Enrique López-Soto appeals convictions and sentences imposed by the United States District Court for the District of Puerto Rico for three Hobbs Act robberies under 18 U.S.C. § 1951, two counts of brandishing a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A)(ii), two counts of possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), one count of possession of ammunition by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and conspiring to commit a Racketeer Influenced and Corrupt Organizations Act ("RICO") violation under 18 U.S.C. §§ 1962(d) and 1963(a). We affirm the convictions and sentences except that we remand for the limited purpose of reducing López-Soto's sentence for the Hobbs Act and RICO counts to the 240-month statutory maximum.

**I.**

López-Soto was alleged to be part of a group -- consisting of himself, Luis Ruiz-Santiago ("Ruiz"), Roberto García-Santiago ("García"), and Jesús Ramírez-Cotto -- that conducted a string of robberies in 2014. Two robberies were conducted with García (on May 23, 2014 and June 3, 2014), and one was with García and Ruiz (on May 17, 2014).

On October 22, 2014, a Grand Jury returned a superseding indictment in Case No. 14-cr-415 charging López-Soto with: (1)

Hobbs Act robbery under 18 U.S.C. §§ 1951 and 2 (Count One); (2) brandishing a firearm during and in relation to a crime of violence under 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count Two); (3) possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 (Count Three); and (4) possession of ammunition by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Four). The same day, a Grand Jury returned an indictment charging López-Soto with: (1) conspiring to commit a Racketeer Influenced and Corrupt Organizations Act ("RICO") violation under 18 U.S.C. § 1962(d) (Count One); (2) Hobbs Act robberies under 18 U.S.C. §§ 1951 and 2 (Counts Fourteen and Fifteen); (3) brandishing a firearm in relation to a crime of violence under 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count Sixteen); and (4) possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 (Count Seventeen). All were aiding and abetting charges except for the RICO charge and the charge for possession of ammunition. The two cases were consolidated and both were tried together starting on December 1, 2016.

López-Soto was represented by counsel until the time of trial, but he represented himself at trial. García and Ruiz cooperated with the government and testified as to López-Soto's participation in the robberies and other offenses for which he was charged. The government also presented evidence (1) of video

recordings of the robberies, one of which appeared to show López-Soto at the scene; (2) that López-Soto was arrested wearing a striped shirt similar to the shirt worn by one of the perpetrators of a May 23, 2014, robbery, and that ammunition seized from López-Soto was of the same caliber as that of the revolver used in the robberies; (3) that López-Soto owned and was arrested in a burgundy-colored Dodge Durango, which matched the vehicle used in the robberies, and that, in López-Soto's presence, his colleagues had attempted to spray paint the Durango black a day after the June 3, 2014 robbery; and (4) that boxes of cell phones and accessories were seized by the government from López-Soto's girlfriend's apartment, including a box with the label of a cell phone store that had been robbed.

The jury convicted López-Soto on all counts. The court sentenced López-Soto to 360 months as to Count One in Case No. 14-cr-415, and as to Counts One, Fourteen, and Fifteen in Case No. 14-cr-637, to be served concurrently with each other but consecutively to an imprisonment term of 84 months as to Counts Two, Three, and Four in Case No. 14-cr-415, and Count Seventeen in Case No. 14-cr-637, and consecutively to 300 months of imprisonment as to Count Sixteen in Case No. 14-cr-637.[1] The sentence results in a total imprisonment term of 744 months (62 years).

---

[1] The Judgement in Case No. 14-cr-637 lists the conviction as to Count Seventeen as corresponding to "18 U.S.C. § 924(g)(1) &

López-Soto appeals.  He filed two sets of briefs: an opening and a reply brief prepared by his counsel, and a pro se brief.  We have jurisdiction under 28 U.S.C. § 1291 to review the final decisions of the district court, and under 18 U.S.C. § 3742 to review the district court's sentence.

**II.**

<u>A.</u>

We first address López-Soto's contention that the district court improperly instructed the jury as to the medical care to which cooperating co-defendant Ruiz was entitled.  López-Soto also contends that, in providing this instruction, the judge indicated bias.  The instruction was given during Ruiz's testimony.  Some background is useful.

Ruiz was arrested on October 29, 2014, and, like López-Soto, charged with Hobbs Act robbery, RICO, and firearm-related offenses.  On November 10, 2014, at his arraignment, Ruiz pled not guilty.

However, on April 6, 2015, Ruiz signed a plea agreement with the government.  Ruiz agreed to plead guilty to a RICO violation and the carrying of a firearm during and in relation to a crime of violence, and the government agreed to dismiss all other

924(a)(2)."  This appears to be a typographical error.  As noted above, Count Seventeen corresponds to 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2.

charges.  As part of the plea agreement, Ruiz stipulated that he led a criminal organization that committed robberies, and listed fourteen robberies conducted by the organization between November 12, 2013, and June 3, 2014.  Ruiz further stated in the plea agreement that López-Soto took part in five of these robberies, which occurred on or about May 4, May 17, May 23, and June 3, all in 2014.  On June 11, 2015, the district court accepted Ruiz's guilty plea.

On June 30, 2015, about 18 months before López-Soto's trial, Ruiz, acting pro se, filed a motion to withdraw his guilty plea.  In a three-page handwritten document, Ruiz asserted that he pled guilty based on his counsel's representation that he would not receive medical treatment unless he accepted the government's plea agreement.  Ruiz claimed that because his medical condition at the time was "critical" -- he continued to suffer from being shot in another incident fourteen years earlier -- his guilty plea was involuntary.  Specifically, Ruiz asserted that he only accepted the plea offer because his attorney told him that he would not get the medical treatment he needed otherwise.  He requested that he be allowed to withdraw his plea and that he be assigned new counsel for trial.  The district court denied Ruiz's motion, explaining that "[Ruiz's] plea has been accepted by the court. More so, the present motion [to withdraw his guilty plea] prepared

by a jailhouse lawyer, and not [Ruiz's] counsel . . ., is perfunctory and generic."

Thereafter, Ruiz appeared as a government witness at López-Soto's trial, testifying as to López-Soto's involvement in the planning and execution of the robberies for which he was charged.

López-Soto sought to attack Ruiz's trial testimony by showing that Ruiz believed he would not receive medical care for his gunshot injuries unless Ruiz agreed to the government's plea deal. López-Soto asked Ruiz:

> And it would be accurate to say that you also express in that document to this Court [i.e., Ruiz's motion to withdraw his guilty plea], sir, that you were going to accept this offer [i.e., the plea agreement] due to the pain and suffering that you have to deal with in the facility at MDC Guaynabo due to the fact that you were shot several times and went through so many surgeries and have a critical health? Yes or no.

Before Ruiz answered, the court called for a sidebar. At sidebar, the court stated:

> Now I'm forced to give an instruction. And the instruction is that he's entitled to that [i.e., medical treatment], plea or not plea. Because that is a right that the defendant has by law, plea or not plea; the right to receive medical treatment.

Then, in open court, the court instructed the jury ("the medical care instruction") over López-Soto's objections, stating:

THE COURT: So the jury is not confused, all defendants, plea or not plea, are entitled by law to the following: To provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. All defendants. All. All of them are entitled to that, plea or not plea. So if you want to continue under this chain of thought, he is entitled medical care. Period. After he leaves MDC Guaynabo, he's entitled to that. In fact, he may have received already some of that treatment if he's living outside MDC Guaynabo.

MR. LÓPEZ-SOTO: But, Your Honor.

THE COURT: Don't argue with me. That's the law. So that they're not confused, they are getting the law now.

MR. LÓPEZ-SOTO: Okay, Your Honor. But I have an objection to that, Your Honor.

THE COURT: You may have many objections, but you asked those questions, and you're leaving this jury in doubt whether or not the matter was going to be accepted or not based strictly on a quid pro quo of the medical treatment. When he, by law, is entitled that. By law. It doesn't go with the plea agreement. You won't find that in the plea agreement either. It's not there. Because he's entitled by law to receive that. You decided to ask these questions. And now the jury was confused thinking that that would be a quid pro quo. That cannot be a quid pro quo.

Keep on asking [your questions].

After this instruction, in response to further questioning by López-Soto, Ruiz testified that he signed the agreement "without any promise."

On appeal, López-Soto argues that the district court's medical care instruction was improper and that the instruction is evidence of bias by the trial judge. We reject the claim of bias but agree that the district court's medical care instruction was improper. We nevertheless conclude that this error was harmless in light of the overwhelming evidence of López-Soto's guilt.

This court has recognized that trial judges have a "common law power to question witnesses and to analyze, dissect, explain, summarize, and comment on the evidence." Logue v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997). "What a trial judge may not do, however, is take on the role of an advocate or 'otherwise use his judicial powers to advantage or disadvantage a party unfairly.'" United States v. Ayala-Vazquez, 751 F.3d 1, 24 (1st Cir. 2014) (quoting Logue, 103 F.3d at 1045). "In that vein, there is no question that it is 'improper for a judge to assume the role of a witness' by testifying to facts or authenticating evidence." Id. (quoting Glasser v. United States, 315 U.S. 60, 82 (1942)). When addressing allegations of judicial bias, this court considers (1) "whether the [judge's] comments were improper"; and, if so, (2) "whether the complaining party can show serious prejudice." United States v. DeCologero, 530 F.3d 36, 56 (1st Cir. 2008).

Although we do not conclude that López-Soto has established that the trial judge was biased, the impropriety of

the district court's medical care instruction is evident. The district court's instruction purported to be a statement of law, but it was in reality a factual representation that Ruiz had an unconditional right to medical care, and strongly implied that Ruiz could not have been concerned about receiving adequate medical care. It also suggested that López-Soto's line of questioning was unsupported and improper. The district court's instruction thus added to the record evidence. In doing so, the district judge failed to heed this court's guidance that "trial judges must guard against adding to the evidence . . . under the guise of . . . commenting on the evidence." Ayala-Vazquez, 751 F.3d at 28; see also Quercia v. United States, 289 U.S. 466, 471–72 (1933) (ordering the reversal of a judgment where "the trial judge did not analyze the evidence; he added to it, and he based his instruction [to the jury] upon his own addition").

The instruction cannot be justified as correcting a factual error as to Ruiz's legal right to medical care. The issue was not whether Ruiz would have been legally entitled to medical care if he had not signed the plea agreement, but instead whether Ruiz believed he had to agree to the plea deal in order to receive care. The district judge's instruction had the effect of eliminating from the jury's consideration this salient factual issue. Not only did the trial judge prevent López-Soto from pursuing this impeachment theory, the judge contradicted it by

- 11 -

suggesting that Ruiz could not have been motivated by his need to secure medical care. The impropriety of the instruction is especially apparent where, as here, the prosecution had neither objected to López-Soto's line of questioning nor sought a corrective instruction from the court.

Notwithstanding this error, we do not order a new trial because López-Soto has not met his burden to show "serious prejudice." See DeCologero, 530 F.3d at 56. It is, first, unclear whether, absent the instruction, Ruiz's testimony would have been helpful to López-Soto. As the district judge noted, the terms of Ruiz's plea agreement stated that "[t]he United States has made no promises or representations except as set forth in writing in this Plea Agreement and deny [sic] the existence of any other term and conditions not stated herein." On cross, Ruiz testified that he signed the agreement "without any promise." And on re-direct, Ruiz distanced himself from his motion to withdraw, testifying that he did not actually write the motion and only "signed it under fear" that he would suffer adverse consequences if he did not sign it. And Ruiz never suggested -- whether in his motion to withdraw or elsewhere -- that his statements regarding López-Soto's involvement in the offenses were false. This evidence suggests that López-Soto's questioning (absent the improper medical care instruction) was unlikely to be helpful to López-Soto.

- 12 -

Even if Ruiz's testimony had been successfully impeached, the other evidence of López-Soto's guilt (described above) -- including testimony by cooperating co-defendant García-Santiago, video recordings, items seized from López-Soto and his girlfriend, and other physical evidence connecting López-Soto to the robberies -- was overwhelming.  In light of this evidence, "[w]e are satisfied that 'there is no chance that the remarks made [by the district judge] prejudiced the outcome' of the trial." See Ayala-Vazquez, 751 F.3d at 27 (quoting United States v. Gentles, 619 F.3d 75, 83 (1st Cir. 2010)).

### B.

We next address López-Soto's contention that the district court erred in preventing him from cross-examining Ruiz about Ruiz's testimony that López-Soto participated in robberies occurring in 2013, in violation of the Sixth Amendment's Confrontation Clause.  The district court had prevented cross-examination on the basis that López-Soto was not charged with 2013 robberies.

Before Ruiz testified, the government had called the other cooperating co-defendant, García.  On direct examination, García testified that López-Soto committed robberies in 2013:

> Q. And going to those robberies in 2013, with whom did you commit these robberies that you're talking to us about?
>
> A. With the gentleman that's here.

- 13 -

Q. And who are you referring to, sir?

. . . .

A. <u>Chemito</u> [i.e., López-Soto].

On cross-examination, García reiterated López-Soto's participation in 2013 robberies:

Q. . . . <u>In what month of 2013 I sold you the revolver, .38 caliber, and we get together and plan all this?</u>

A. It was around, like, May or June. We would meet in that business establishment Flor de Mayo. Luis, Chemito would meet there with me. I would bring Coco, Juvencio, Juve, and myself. Yeah.

. . . .

BY MR. LÓPEZ-SOTO:

Q. Can you specify a month in 2013 that I participate in any robbery with you?

A. I don't recall exactly like that in 2013, a month.

Q. <u>But you remember it was in 2013?</u>

A. <u>That's right. That's correct.</u>

(emphasis added). The district court imposed no limit on the cross-examination.

Later when Ruiz took the stand he testified as to López-Soto's participation in robberies. On questioning from the government, Ruiz stated:

- 14 -

Q. Did it come a time that you engaged in robberies, sir?

A. Yes.

. . . .

Q. And when was this, sir?

A. Well, in 2013. Well, or 2013, 2014. On or about that time.

. . . .

Q. And, sir, you mentioned to us that around 2013, 2014 you did robberies.

A. Correct.

Q. With whom did you do these robberies?

. . . .

A. With . . . Chemito [i.e., López-Soto].

(emphasis added).

On cross-examination, López-Soto sought to discredit Ruiz by getting him to admit that López-Soto had not participated in any robberies in 2013. To that end, López-Soto asked Ruiz the date in 2013 on which they first met. Before Ruiz answered, the prosecutor objected. The prosecutor reasoned that López-Soto did not have a "good-faith basis" for asking the question because he "knows that he participated [only] in 2014, that's why he cannot coax the witness [into testifying that they that met or committed robberies] in 2013." The district court sustained the government's objection, explaining to López-Soto that "[y]ou

- 15 -

cannot . . . coax the witness to give a wrongful answer and then say that he's a liar," and that "[y]ou're not charged with anything in 2013. Nothing." As a result, López-Soto was not allowed to cross-examine Ruiz as to López-Soto's involvement (or lack thereof) in robberies in 2013.

López-Soto asserts that the district court's restrictions violated his rights under the Sixth Amendment's Confrontation Clause. "The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Davis v. Alaska, 415 U.S. 308, 315 (1974). The right to confrontation includes the right to challenge the credibility of those witnesses. See id. at 318. A district court's limitation on cross-examination violates the Confrontation Clause if, "absent the limitation, . . . the jury [would] have received a 'significantly different impression' of the witness's credibility." DiBenedetto v. Hall, 272 F.3d 1, 10 (1st Cir. 2001) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986)).

We conclude that López-Soto's Confrontation Clause rights were not violated. Ruiz's testimony at issue was cursory and hardly clear, in contrast to the earlier García testimony. The most reasonable interpretation of Ruiz's testimony was simply that he himself was unclear about the date of the charged robberies, rather than that López-Soto had engaged in additional,

uncharged robberies in 2013. Allowing the testimony to stand (without cross-examination) did not reasonably create an impression that López-Soto committed other, uncharged robberies. In other words, Ruiz's testimony as to López-Soto's involvement in "2013, 2014" -- even absent cross-examination -- was not prejudicial to López-Soto.

In any event, even interpreting Ruiz's testimony to be that López-Soto participated in robberies in 2013, that testimony was inconsequential relative to Ruiz's testimony as a whole. A defendant's Confrontation Clause right "is not without limits," and "the district court wields considerable discretion to impose 'reasonable limits' on cross-examination." United States v. Casey, 825 F.3d 1, 24 (1st Cir. 2016) (quoting United States v. Raymond, 698 F.3d 32, 40 (1st Cir. 2012)). "The court need not permit unending excursions into each and every matter touching upon veracity if a reasonably complete picture [of a witness] has already been developed." United States v. Fortes, 619 F.2d 108, 118 (1st Cir. 1980). Ruiz's testimony, which spanned over two days and dozens of pages in the trial transcript, easily provided the jury with a reasonably complete picture of his "veracity, bias, and motivation." See United States v. Capozzi, 486 F.3d 711, 723 (1st Cir. 2007) (quoting United States v. Byrne 435 F.3d 16, 21 (1st Cir. 2006)).

Ruiz testified that he had entered into a cooperation agreement with law enforcement, and that he had done so "to help [him] out with [his] sentencing and to start out anew, from zero. Be a good citizen." Ruiz testified that he "would face an additional charge" if he did not "comply with the conditions of [his] cooperation [agreement]." And López-Soto elicited testimony from Ruiz that tended to undercut Ruiz's credibility, for example, that Ruiz initially claimed to not recognize López-Soto. We cannot conclude that, absent the cross-examination that López-Soto sought, the jury lacked a "reasonably complete picture" of Ruiz's credibility, see Capozzi, 486 F.3d at 723, or that if the district court had not limited López-Soto's cross-examination the jury would have had a "significantly different impression" of Ruiz's credibility, see Van Arsdall, 475 U.S. at 680. López-Soto's right to confront the witnesses against him was not violated.

López-Soto does not argue that, aside from a Confrontation Clause violation, the district court abused its discretion. We find no error as to the district court's limitation of López-Soto's cross-examination.

## C.

We next turn to López-Soto's contention that the government violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to timely disclose materials pertaining to an interview of co-defendant Ruiz by law enforcement on the day of his arrest. In

that interview, Ruiz had been shown several photographs and been asked to identify the person in each photograph.  Ruiz identified, among others, co-defendants García and Juvencio Correa-Morales.  However, when shown a photograph of López-Soto, Ruiz "said that [he] didn't know him."  We review the district court's decision on López-Soto's Brady claim for abuse of discretion.  See United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003).

Although López-Soto received a report of this interview ("ROI")[2] before trial, the government did not provide López-Soto with the photographs associated with the ROI until the fourth day of López-Soto's trial.  Without these photographs, López-Soto could not have known that Ruiz's statement in the ROI that he did not recognize the subject of the photograph was referring to López-Soto.  The district court recognized the tardiness of the government's disclosure, and first offered a trial continuance when López-Soto complained about the late disclosure.  The court asked: "how much more time [in addition to the day being provided] do you want?"  López-Soto did not respond to the question.  The district court found that the delay could be sufficiently remedied

_____

[2] It appears that the ROI is not in the record.

The government had attempted to video record the interview, but it seems that due to a technical problem no recording was actually made.  López-Soto attempted to present evidence of the loss of this recording to the jury, but the district court excluded the evidence as merely collateral.  López-Soto does not challenge the district court's decision on this point.

by allowing López-Soto to use the ROI in trial the following day. The court stated: "It [the disclosure of the photographs] may have been late, but it [the delay] is easily cured by giving him time. Because he now knows, if he didn't know, that is the photograph" of López-Soto presented to Ruiz. The following day López-Soto elicited testimony from Ruiz that when he was shown the photograph of López-Soto, Ruiz had stated that he "did not know him." On appeal, López-Soto asserts that the government's delay in disclosing these photographs warrants vacatur of his convictions and remand for a new trial.

"In a criminal case, [under Brady,] the government bears an 'affirmative duty to disclose evidence favorable to a defendant.'" United States v. Montoya, 844 F.3d 63, 71 (1st Cir. 2016) (quoting Kyles v. Whitley, 514 U.S. 419, 432 (1995)). "If the government fails disclose this so-called Brady material in a timeous manner, the defendant may be entitled to relief." Id. To show that a delayed disclosure of information violated the government's Brady obligation, the defendant has a "threshold burden" to "show that 'learning the information altered the subsequent defense strategy, and [that], given timeous disclosure, a more effective strategy would likely have resulted.'" United States v. Lemmerer, 277 F.3d 579, 588 (1st Cir. 2002) (alteration in original) (quoting United States v. Devin, 918 F.2d 280, 290 (1st Cir. 1990)).

López-Soto has not satisfied his threshold burden to show prejudice caused by the delayed disclosure. After having been provided the photographs with a day to prepare, López-Soto was able to demonstrate that Ruiz had previously claimed not to know López-Soto. López-Soto fails to explain how he would have done things differently had the photographs been disclosed earlier. In his briefing, López-Soto argues that "[i]t is hard to think of anything more favorable or potentially exculpatory" than evidence suggesting that Ruiz did not know López-Soto. But this argument goes to materiality, not López-Soto's burden to show that "a more effective [trial] strategy" would have resulted from an earlier disclosure. See Lemmerer, 277 F.3d at 588. At oral argument, López-Soto could only provide "the obvious but admittedly generic answer that the appellant would have been better prepared for trial" with an earlier disclosure. But López-Soto "'must bear the burden of producing, at the very least, a *prima facie* showing of a plausible strategic option which the delay foreclosed' . . . or [how the delay] prevented defense counsel from using [the evidence] effectively." Id. (quoting Devin, 918 F.2d at 290). López-Soto has not met his burden.

D.

López-Soto argues that his motion to suppress should not have been denied and that the evidence at trial was insufficient to convict him.

Although the district court granted López-Soto's motion to suppress his confession made while in custody, it denied the motion as to evidence of (1) statements that he made at the time of his arrest, and (2) two items (.38 caliber bullets and a plastic pistol) that were seized from his vehicle when he was arrested. López-Soto had moved to suppress on the theory that the government lacked probable cause to arrest him and search his vehicle. López-Soto argues that the district court erred in denying his motion to suppress and his request for a suppression hearing. We disagree.

López-Soto has not established error in the district court's suppression rulings. "When reviewing a district court's disposition of a motion to suppress, we accept the court's findings of fact unless they are clearly erroneous and subject its conclusions of law . . . to de novo review." United States v. Brown, 500 F.3d 48, 53 (1st Cir. 2007). López-Soto contends that the district court erred in denying his motion to suppress "just and only because" he did not file an affidavit under penalty of perjury in support of his motion. This misunderstands the district court's ruling. The district court properly concluded that probable cause was established by the combination of (1) an informant's tip as to López-Soto's location; and (2) video footage of a robbery that was used to identify López-Soto as a perpetrator. Though the district court indicated that its denial was without

prejudice to a renewed motion to suppress based on an affidavit by López-Soto (or another), the district court did not deny suppression due to the lack of such an affidavit.

Nor did the district court err in denying López-Soto's request for a suppression hearing. López-Soto's motion to suppress was premised entirely on undisputed facts, and his one-line request for a hearing did not explain the purpose that a hearing would serve. It was not an abuse of discretion for the district court to conclude that, without a showing in the form of a sworn statement that would create a material factual dispute, a hearing on the motion to suppress was unnecessary.

<u>2</u>

López-Soto argues that the district court erred in denying his motion for acquittal for two of the firearm counts of which he was convicted: brandishing a firearm during a Hobbs Act robbery under 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Case No. 14-cr-415, Count Two), and possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 2 (Case No. 14-cr-415, Count Three). López-Soto was convicted under the theory that he aided and abetted García in the commission of these offenses. To be convicted as an accomplice to a section 924(c)(1)(A)(ii) offense, the government had the burden to show beyond a reasonable doubt that López-Soto knew "to a practical certainty" that García would brandish a gun. See <u>United States</u> v. <u>Spinney</u>, 65 F.3d 231, 234

- 23 -

(1st Cir. 1995) (quoting United States v. Torres-Maldonado, 14 F.3d 95, 103 (1st Cir. 1994)).  To be convicted as an accomplice to the section 924(g) offense, the government had the burden to show that López-Soto knew that García possessed a firearm.  See United States v. Ford, 821 F.3d 63, 74 (1st Cir. 2016).  López-Soto asserts the government failed to meet this burden.

"We review [a district court's decision to deny a motion for acquittal] de novo, but our review . . . is 'quite limited; we must affirm unless the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt.'"  United States v. Hernandez, 218 F.3d 58, 64 (1st Cir. 2000) (quoting United States v. Paradis, 802 F.2d 553, 559 (1st Cir. 1986)).

There was ample evidence to support the verdict.  Cooperating co-defendant García testified that, on June 3, 2014, he and López-Soto robbed an AT&T store in Lares, Puerto Rico, and that in the robbery García had brandished a .38 caliber revolver.  The evidence supported a finding that López-Soto knew García possessed and would brandish the revolver.  García testified that: (1) López-Soto had sold the revolver to him, (2) García had visibly handled and inspected the weapon in the car -- while López-Soto was in the other front seat -- before the robbery, (3) "we always carried it [i.e., the gun] with us" during robberies, and (4) López-Soto "was aware that [García's] modus operandi was to always

- 24 -

show the firearm during the robberies."  Based on this testimony, "a rational jury could have found that the government proved the [knowledge] elements of the crime[s] beyond a reasonable doubt." See United States v. Appolon, 715 F.3d 362, 367 (1st Cir. 2013) (quoting United States v. Mardirosian, 602 F.3d 1, 7 (1st Cir. 2010)).

3

López-Soto argues that the district court erred in denying his motion for acquittal as to all counts because none of the victims identified López-Soto at trial.  López-Soto's argument lacks merit.  This court has never required that a victim identify the defendant, but has instead "repeatedly . . . held that 'the uncorroborated testimony of a cooperating accomplice may sustain a conviction so long as that testimony is not facially incredible.'"  United States v. Cortés-Caban, 691 F.3d 1, 14 (1st Cir. 2012) (quoting United States v. Torres-Galindo, 206 F.3d 136, 140 (1st Cir. 2000)).  Here, not one but two cooperating co-defendants -- García and Ruiz -- testified as to López-Soto's participation in the robbery scheme of which he was accused. Documentary evidence, physical evidence, and the testimony of many victims and government agents corroborated García and Ruiz's testimony.  The evidence is more than sufficient to sustain the verdict.

López-Soto challenges various other rulings of the district court.

1

López-Soto argues that the district court erred in consolidating the two cases for which he was being prosecuted. The court reviews joinder decisions de novo. United States v. Ponzo, 853 F.3d 558, 568 (1st Cir. 2017) López-Soto does not appear to contest the propriety of joinder under Federal Rule of Criminal Procedure 13. Nor has López-Soto demonstrated prejudice sufficient to foreclose joinder. See Fed. R. Crim. P. 14. López-Soto has not shown error in the consolidation of these cases.

2

López-Soto contends that the district court's denial of his request for a continuance of the start of the trial was an abuse of discretion and violated his Sixth Amendment rights. The court "review[s] a denial of a motion for a continuance for abuse of discretion." United States v. Arias, 848 F.3d 504, 514 (1st Cir. 2017). "If the denial of a continuance effectively deprives a pro se defendant of the ability to represent himself, it may constitute both an abuse of discretion and a Sixth Amendment violation." Barham v. Powell, 895 F.2d 19, 22 (1st Cir. 1990). Because López-Soto raises this argument for the first time on

appeal, we review the district court for plain error. See United States v. González-Barbosa, 920 F.3d 125, 128 (1st Cir. 2019).

At a hearing three days before trial, the district court gave final approval to López-Soto's request to represent himself at trial. López-Soto then moved to continue his trial, contending primarily that he did not have enough time to "confer with witnesses" that he intended to call. The district court denied the continuance. As the district court noted, López-Soto had been requesting to represent himself for over a year and had been filing pro se motions for two years. The district court concluded López-Soto would have adequate time to prepare his witnesses.

On appeal, López-Soto asserts that he did not have sufficient time to review video recordings of the robberies of which he was accused. But, at the pre-trial hearing, the district court ordered the government to provide López-Soto with the recordings; López-Soto suggested at trial that he had seen them; and López-Soto did not thereafter raise the issue at the district court. In failing to articulate with particularity how additional time would have improved his effectiveness at trial, López-Soto has not met his "heavy burden" to "show that the judge's decision caused specific, 'substantial prejudice.'" United States v. Robinson, 753 F.3d 31, 41 (1st Cir. 2014) (quoting United States v. Maldonado, 708 F.3d 38, 42 (1st Cir. 2013)). López-Soto has

not shown that the district court abused its broad discretion in declining to continue the trial.

3

López-Soto challenges the district court's denial of many of his pro se pretrial motions. So long as López-Soto was represented by counsel, he had no right to file his own motions. López-Soto "has no right to hybrid representation" by himself and counsel simultaneously. See United States v. Nivica, 887 F.2d 1110, 1121 (1st Cir. 1989). "That is not to say that hybrid representation is foreclosed; rather, it is to be employed sparingly and, as a rule, is available only in the district court's discretion." Id. We review the district court's decision to not allow hybrid representation for abuse of discretion. Id. Here, the court noted that López-Soto's counsel were "excellent" and had "vast experience here in court precisely in this type of case," whereas López-Soto had "no experience in any legal analysis." The district court did not abuse its discretion in declining to consider his pro se motions while he was represented by counsel.

In any event, López-Soto presents no developed argument as to what motions were erroneously denied, merely citing docket numbers of the motions and the district court's corresponding orders. These motions generally requested the court to compel the government to produce directly to López-Soto evidence it intended to use at trial. The court denied many of these pro se motions

because López-Soto was, at the time, being represented by two attorneys. The court ordered López-Soto "to provide his counsel with a copy of any motion he wishes to file for counsel to perfect the motion and duly file it."

López-Soto has not shown any error in the court's denial of his pro se motions. López-Soto has not specifically articulated why he needed the evidence directly from the government. He states that the motions were "important for the preparation of the defendant's defense" and notes that the government did not respond to many of these motions. But López-Soto does not explain, for example, why he could not obtain government evidence from his counsel, and why instead he needed a court order that the government produce it to him directly. There was no abuse of discretion by the district court in rejecting López-Soto's motions.

4

López-Soto also contends that the district court erred in "allowing the US government to file a second response to [López-Soto's] motion" for acquittal. The government's original response to López-Soto's motion for acquittal did not include citations to the record. The district court, sua sponte, ordered the government to refile its response -- with citations to the record -- within four business days. The district court's ruling was not an abuse of discretion.

- 29 -

Finally, López-Soto argues that his sentence of 744 months of imprisonment is substantively unreasonable. He acknowledges that "the statutory and guidelines calculations appear to be correctly applied and accurate," but primarily argues that "in the face of his codefendants' more extensive charged criminal acts," the substantially higher sentence that he received is unreasonable. López-Soto did not raise the issue of disparity between his sentence and that of his co-defendants before the district court. We therefore review the district court's sentence only for plain error. See Gonzalez-Bárbosa, 920 F.3d at 128.

All three of López-Soto's co-defendants pled guilty to: (1) a RICO violation under 18 U.S.C. §§ 1962(d) and 1963(a); and (2) carrying a firearm during and in relation to a crime of violence under 18 U.S.C. §§ 924(c)(1)(A). Co-defendant Jesús Ramírez-Cotto was sentenced to 171 months of imprisonment. Co-defendant Ruiz's sentence was sealed, but his plea appears to have recommended a sentence between 205 and 235 months. Co-defendant García's sentence was also sealed, but his plea agreement recommended a sentence between 262 and 327 months.

Title 18, section 3553(a) provides factors that a court, "in determining the particular sentence to be imposed, shall consider." Section 3553(a)(6) notes "the need [in sentencing] to

avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Here, focusing on the disparities of the defendants, and even assuming that the sentences of Ruiz and García were within the range proposed, López-Soto's disparity argument fails. "Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." Gall v. United States, 552 U.S. 38, 54 (2007) (emphasis added). "Although this section is primarily aimed at national disparities, rather than those between co-defendants, a district court may consider differences and similarities between co-defendants at sentencing." United States v. Marceau, 554 F.3d 24, 33 (1st Cir. 2009) (citation omitted).

There is no showing of an unwarranted disparity. López-Soto's co-defendants were not "found guilty of similar conduct." See 18 U.S.C. § 3553(a)(6). Though some of López-Soto's co-defendants were charged with more crimes than López-Soto, all three co-defendants were convicted of fewer crimes. Notably, for example, López-Soto was convicted of three Hobbs Act robberies, whereas none of his co-defendants was convicted of any.

So too, all co-defendants to whom López-Soto compares himself pled guilty (López-Soto did not), and two of the three cooperated with law enforcement (López-Soto did not). This court

has recognized "the permissible distinction" for sentencing purposes "between co-defendants who go to trial and those who plead guilty" and "between those who cooperate and those who do not." United States v. Reyes-Santiago, 804 F.3d 453, 467 (1st Cir. 2015).

In light of these differences between his co-defendants and himself, López-Soto cannot show "clear[ly] or obvious[ly]" that the district court abused its discretion in imposing its sentence. See González-Barbosa, 920 F.3d at 128 ("Courts frequently reject disparity claims . . . when appealing defendants ignore material differences between their own circumstances and those of their co-defendants.").

## III.

We conclude that the district court erred in providing its medical care instruction to the jury, but find this error to be harmless in light of the overwhelming evidence of López-Soto's guilt. For López-Soto's remaining challenges, we find that he has not shown that the district court plainly erred or abused its discretion.

As the government notes in its Informative Motion, the district court -- in sentencing López-Soto to 360 months for Count One of Case No. 14-cr-415 and Counts One, Fourteen, and Fifteen of Case No. 14-cr-637 -- exceeded the statutory maximum of 240 months for these offenses. See 18 U.S.C. §§ 1951(a) and 1963(a). We

vacate the district court's sentence in this respect and remand for the district court to enter a sentence of 240 months for these counts to be served concurrently with each other.  See United States v. Almonte-Nuñez, 771 F.3d 84, 92 (1st Cir. 2014)

**<u>Affirmed-in-part, vacated-in-part, and remanded.</u>**