# United States Court of Appeals
## For the First Circuit

Nos. 21-1602, 21-2003

UNITED STATES,

Appellee,

v.

BARRY J. CADDEN,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

Michelle R. Peirce, with whom Bruce A. Singal and Hinckley, Allen & Snyder LLP were on brief, for appellant.
Chris Looney, Assistant United States Attorney, with whom Rachael S. Rollins, United States Attorney, was on brief, for appellee.

October 13, 2022

**BARRON**, <u>Chief Judge</u>.  Barry J. Cadden was convicted on fifty-seven counts under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 <u>et seq.</u>, the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. 301 <u>et seq.</u>, and the federal mail fraud statute, 18 U.S.C. § 1341.  He was initially sentenced for these crimes to a 108-month prison term, but the government appealed, and we vacated and remanded that sentence. <u>United States</u> v. <u>Cadden</u>, 965 F.3d 1, 40 (1st Cir. 2020).  He now appeals from the 174-month prison term that he received at his resentencing.  We affirm.

## I.

We have described the circumstances underlying Cadden's criminal conduct in prior cases.  <u>See</u> <u>United States</u> v. <u>Cadden</u>, 965 F.3d 1 (1st Cir. 2020) (<u>Cadden I</u>), <u>United States</u> v. <u>Chin</u>, 965 F.3d 41 (1st Cir. 2020) (<u>Chin I</u>), <u>United States</u> v. <u>Chin</u>, 41 F.4th 16 (1st Cir. 2022), <u>cert. denied</u>, No. 22-5534, 2022 WL 6573283 (Oct. 11, 2022) (<u>Chin II</u>).  Suffice it to say, Cadden was the founder and partial owner of the New England Compounding Center ("NECC"), a company that carried out pharmaceutical compounding operations to produce medications used nationwide.  In 2012, a deadly outbreak of fungal meningitis was traced to methylprednisolone acetate ("MPA") that NECC produced.  A federal criminal investigation ensued.  It resulted in Cadden, Glenn Chin, and other NECC staff being indicted on federal charges, including charges arising under

- 2 -

the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Federal Food, Drug, and Cosmetic Act ("FDCA"), and the federal mail fraud statute. Cadden and Chin were found guilty of the RICO and mail fraud charges, as well as some of the FDCA charges.[1]

Cadden's first sentencing hearing was held in June 2017. There, the District Court calculated Cadden's range under the United States Sentencing Guidelines ("U.S.S.G.") to be 87 to 108 months of imprisonment and sentenced Cadden to a prison term of 108 months.

Chin's first sentencing, before the same judge as Cadden's, was held in January 2018. The District Court calculated Chin's Sentencing Guidelines range to be 78 to 97 months of imprisonment. The District Court then imposed a prison term of 96 months.

During both Cadden's and Chin's initial sentencings, the District Court determined that enhancements set forth in two Sentencing Guidelines did not apply to either Cadden or Chin. See Cadden I, 965 F.3d at 33-36; Chin I, 965 F.3d at 52-55. The two enhancements are set out, respectively, in U.S.S.G. § 2B1.1(b)(16)(A), "which imposes a two-level increase in the base offense level of those convicted of certain crimes '[i]f the offense involved . . . the conscious or reckless risk of death or

---

[1] Cadden was charged with other offenses but was acquitted on those counts.

serious bodily injury'" ("conscious or reckless risk enhancement"), and U.S.S.G. § 3A1.1(b), "which imposes a two-level increase in the base offense level '[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim' and an additional two-level increase if that enhancement applies and 'the offense involved a large number of vulnerable victims'" ("vulnerable victims enhancement"). Chin II, 41 F.4th at 19 (alterations in original) (quoting U.S.S.G. §§ 2B1.1(b)(16)(A), 3A1.1(b)).

The United States appealed from the sentences imposed on both Cadden and Chin. We vacated Cadden's sentence in Cadden I, while clarifying the circumstances in which the enhancements set out in the two Sentencing Guidelines quoted above would apply. Cadden I, 965 F.3d at 33-36. We specified that, if the District Court found on remand "that the enhancements should have been applied [to Cadden] and that the Guidelines range it originally calculated requires modification," it should "update[] the Guidelines range to account for the application of one or both of these enhancements," then "of course consider the parties' updated arguments for what Cadden's sentence should be in light of the modified range." Id. at 36. We also specified that the "District Court may not, however, reconsider on remand other enhancements or aspects of its initial sentencing calculation beyond those issues narrowly required by its reconsideration of the two enhancements"

- 4 -

at issue in that appeal. Id. We similarly vacated Chin's sentence in Chin I, while issuing similar instructions to the District Court in that case about how to determine whether these two enhancements should be applied on remand. Chin I, 965 F.3d at 56 ("In light of the issues we have identified with the treatment of [the] enhancements, the District Court may find on remand that application of one or more of these enhancements is warranted and that recalculation of Chin's sentencing range is necessary. If it does, then the District Court may of course in imposing a final sentence consider the parties' arguments about how the traditional concerns of sentencing play out given the modified range.").

The District Court resentenced Cadden on July 7, 2021. The District Court determined that both the conscious or reckless risk enhancement and the vulnerable victims enhancement applied to Cadden. The same sentencing judge then resentenced Chin over two days of proceedings on July 8 and July 21, 2021, and determined that each of the enhancements applied to him as well.

The District Court determined that the application of the two enhancements to Cadden resulted in a six-level increase to his base offense level under the Sentencing Guidelines. The District Court reached the same conclusion as to Chin.

The District Court recalculated Cadden's Sentencing Guidelines range, based on his increased offense level, to be 168 to 210 months of imprisonment, and imposed on Cadden a prison

sentence of 174 months.  The District Court similarly recalculated Chin's Sentencing Guidelines range to be 151 to 188 months of imprisonment, but chose to vary below that range and sentenced Chin to 126 months.

Chin and Cadden each appealed the District Court's determination that the conscious or reckless risk enhancement and the vulnerable victims enhancement applied to them.  On July 15, 2022, we affirmed Chin's sentence in Chin II.  We now address Cadden's.

**II.**

Much of Cadden's appeal focuses on whether the District Court erred in applying the conscious or reckless risk and vulnerable victims enhancements when calculating his base offense level.  But, as Cadden acknowledged at oral argument, the District Court did not err in construing the Guidelines setting forth those enhancements, at least given our decision in Chin II, which was decided prior to oral argument in this case but after briefing had been completed. Cadden also does not contend -- again, in consequence of our ruling in Chin II -- that the District Court erred in finding that the conscious or reckless risk enhancement applied to Cadden.

Notwithstanding Chin II, Cadden does still appear to be challenging the District Court's determination that the vulnerable victims enhancement applied to him.  Specifically, he appears to

- 6 -

be contending that the government has failed to meet its burden to show that he had the required knowledge that the victims of the MPA contamination were vulnerable because the record does not suffice to show that he "knowingly ship[ped] contaminated drugs." The record's failure to show that he had such knowledge about his offense, according to Cadden, necessarily means that it fails to show that he had "reason to know that patients were receiving contaminated MPA at all, let alone reason to know that [those patients] were 'unusually vulnerable.'"

Because this argument was not raised below, our review is only for plain error. As a result, Cadden must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). But, he fails to do so, given our ruling in Chin II. There, Chin contended that the "absence of record evidence of his individualized knowledge of both who the end users of NECC drugs would be and that the drugs that NECC shipped were contaminated" precluded the District Court from applying the vulnerable victims enhancement to him. Chin II, 41 F.4th at 29. But, we upheld the District Court's application of the enhancement because "evidence was presented at trial that tended to show that Chin was aware of the particularly grave risks associated with

injecting contaminated medication into a patient's spinal fluid, as opposed to other routes of drug administration," and other evidence "brought home the certainty that Chin and other of the coconspirators were fully aware of the risks involved in the distribution of defective drugs."  Id.

The District Court likewise found here that Cadden "did design and preside over what was, as he recognized[,] a high-risk enterprise" and that he ignored "warnings [and] signals," at least some of "which he had to have been aware," including issues with "specification tests, incomplete testing, falsification of drug lab cleaning reports, . . . [and] the appearance of mold and other contaminants in the clean room."  And, Cadden neither argues nor points to anything in the record that shows, let alone clearly shows, that he was any less aware than Chin either that MPA was being administered via "injecti[on] . . . into a patient's spinal fluid" or of the "particularly grave risks" associated with doing so.  Chin II, 41 F.4th at 29.  Thus, we reject this aspect of his challenge to the sentence that he received as well.

## III.

We turn, then, to Cadden's separate contention that, even if the District Court rightly applied the two enhancements in question when determining Cadden's base offense level, the resulting sentence still cannot stand.  He contends that is so for two distinct reasons, neither of which we find persuasive.

**A.**

Cadden first contends that, in resentencing him, the District Court "improperly and inexplicably stated its belief that it had no discretion to impose the sentence it determined was reasonable." Again, we review for plain error, as Cadden did not raise this contention below.

Cadden does not specify whether this challenge that the District Court misapprehended its discretion is to the procedural or substantive reasonableness of the sentence to which he was subject. See United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017) ("Appellate review of claims of sentencing error entails a two-step pavane. Under this framework, we first address any assignments of procedural error. If the sentence passes procedural muster, we then address any challenge to its substantive reasonableness." (internal citations omitted)). But, we do not see how the challenge could succeed as a challenge to the sentence's substantive reasonableness if it could not succeed as a challenge to the sentence's procedural reasonableness. And, as we will explain, it fails on plain error review as a procedural reasonableness challenge, given the nature of the four statements that the District Court made that Cadden relies on to support this ground for challenging his sentence.

First, Cadden points to a statement that the District Court made when determining that the conscious or reckless risk enhancement applied to him:[2]

> I know counsel understand that I am constrained in a number of respects by the First Circuit's decision [in Cadden I]. I may disagree with the decision in some respects, but that does not matter, in that I owe deference to them and am required to follow their dictates as I understand them. . . . To begin with the first of the rulings, the First Circuit appeared to take the view that I did not recognize that the [vulnerable victims] enhancement is phrased in the subjunctive rather than the conjunctive sense. I do not think that is a correct statement of my findings in that regard. . . . But that is, as I understand it, the law as the First Circuit now has defined it. I do recognize that the First Circuit was correct, and, therefore, I was incorrect in my belief that the enhancement applied only if it was anchored in an actual count of conviction rather than through an assessment of a defendant's conduct as a whole. It is clear that the First Circuit takes the latter position and disagreed with me on the former. So with these two considerations in mind, I am constrained to agree that the enhancement does apply . . . . I have to conclude that [Cadden's] conduct did and does fit within the definition of "recklessness" as set out in the new First Circuit test.

---

[2] Cadden's briefing contained shorter excerpts of the first and second statements by the District Court than we include here. We include longer excerpts to demonstrate the context in which the statements were made.

Second, Cadden points to the statement that the District Court made in determining that the vulnerable victims enhancement also applied to him:

> With respect to the second enhancement involving victims, here I think the First Circuit has essentially decided the issue for me, so I will go directly to their decision. . . . Given the First Circuit's explicit ruling in the Cadden decision, I have no choice but to say, yes, the enhancement applies.

Third, Cadden points to the statement that the District Court made after announcing his newly calculated Sentencing Guidelines range but prior to imposing his sentence:

> I do also recognize that the Court of Appeals was of at least the implicit, if not explicit, view that my prior sentence was excessively lenient. I do not personally agree, but so it is with many of the things that I am required to do as a judge.

Finally, Cadden points to the statement that the District Court made in announcing Chin's sentence on July 21:

> The First Circuit, though, has clearly, very clearly, made clear its belief that whatever I may have thought about the justice of the original sentence, that, under their formula, the sentence I imposed was too lenient, and I do recognize that I have to abide by their judgment in that regard.

The first and second statements fail to support Cadden's contention that the District Court plainly erred in imposing the sentence that it did. Each statement is nothing more than a correct statement of the law that the District Court was required

to apply. So, neither statement shows that the District Court mistakenly thought that, due to Cadden I, it lacked the discretion to impose a prison sentence as short as the one that it had previously imposed.

The District Court's reference in the third statement to Cadden I's "implicit, if not explicit" view about the leniency that the District Court showed during Cadden's first sentencing also fails to support Cadden's challenge, at least given that we are reviewing only for plain error. The statement need not be understood as a statement that the District Court believed itself to be barred by Cadden I from imposing the same length of prison sentence at Cadden's resentencing as it had imposed at his initial sentencing when it was relying on a different and -- as Chin II revealed, given the facts that the District Court found at Cadden's resentencing -- mistaken calculation of his Sentencing Guidelines range. Instead, this third statement can fairly be read merely as recognizing that Cadden I's legal reasoning (both express and implied), when applied to the facts that the District Court found at the resentencing, required the District Court to apply the enhancements to Cadden at resentencing that it had declined to apply to him at his original sentencing. Thus, we cannot say from this statement that it is clear or obvious that the District Court imposed the sentence that it did here because it concluded that it

- 12 -

lacked the discretion to do otherwise once it applied the Guidelines in the manner Cadden I required.

The fourth statement was made at Chin's sentencing, not Cadden's. So, for that reason alone, it is hard to see how it plainly shows that the District Court thought that it lacked the relevant quantum of discretion when it sentenced Cadden. But, even setting that feature of the statement aside, it is not different in substance from the third statement. Considered in context, it, too, may be understood as a commentary about the effect of our earlier rulings on how the relevant Guidelines must be interpreted (and, given the facts found at the resentencing, that the enhancements set forth in those Guidelines must have been applied at that proceeding) rather than as a bald statement that we had denied the District Court the discretion to vary downward from the Sentencing Guidelines range calculated after a proper analysis of the two Guidelines at issue. Thus, here as well it cannot be said that it is clear or obvious from this statement that the District Court was laboring under such a misimpression about what we had held in our earlier rulings. And, that being so, Cadden cannot find support for his claim of plain error in this statement any more than he can in any of the other three.

Simply put, none of the four statements, when read in context, support the claim of plain error. Nor do the statements do so when read as a whole, given that nothing about their

- 13 -

interaction with one another yield a sum greater than zero. We therefore see no basis for overturning Cadden's sentence in these statements.

**B.**

Cadden's remaining challenge to his 174-month prison sentence concerns the disparity between his newly imposed sentence and Chin's newly imposed sentence. Specifically, Cadden argues that the "[D]istrict [C]ourt inexplicably widened the gap between Cadden's and Chin's sentences, creating an unwarranted and unreasonable sentence disparity" when it increased the gap between Cadden's and Chin's sentences from 12 months (11 percent of Cadden's original 108-month sentence) at the first sentencing to 48 months (28 percent of Cadden's new 174-month sentence) at the second sentencing.[3] Cadden argues that this unexplained disparity is both a procedural and substantive error.

But, even assuming this challenge is preserved, such that our review of the District Court's "discretionary judgments" is for "abuse of discretion, its findings of fact for clear error, and its conclusions of law de novo," United States v. Reyes-Santiago, 804 F.3d 453, 468 (1st Cir. 2015), the challenge

---

[3] Cadden frames his argument in the same relative terms we use to present it here. He does not argue that the District Court should have maintained the same 12-month differential between his sentence and Chin's, only that the District Court should have left the percentage disparity between the sentences undisturbed.

- 14 -

still fails. And that is so for the simple reason that we do not confront here an "apples to apples" comparison. United States v. Candelario-Ramos, 45 F.4th 521, 526 (1st Cir. 2022) (quoting United States v. González-Barbosa, 920 F.3d 125, 131 (1st Cir. 2019)).

As the government points out, Chin gave an allocution at his second sentencing proceeding that explained his efforts to "better [him]self" in prison, including through "counsel[ing] other inmates about drug addiction and recidivism." Chin also stated that he "fe[lt] responsible for what happened because [he] made the drugs that made . . . people terribly sick, including those who have died" and apologized to the victims and their families. And, the District Court explained in imposing Chin's sentence that it was "happy to have heard" Chin's allocution, because it was a "showing [of] genuine contrition and, more importantly, genuine self-reflection." The District Court also explained that, in its view, Chin was on the day of his resentencing "a different man than the portrait that was painted at trial" because he had engaged in "introspection and examination of his own responsibility for what occurred." By contrast, when the District Court asked if Cadden wished to make an allocution at his resentencing, Cadden declined and chose instead to communicate, through counsel, that "the sentiments he expressed" during his "extensive allocution at his initial sentencing" were unchanged. Thus, because Chin and Cadden were differently

- 15 -

positioned from one another as of the time of their respective resentencings, relative to how they were positioned at the time of their respective initial sentencings, we see no basis for finding Cadden's sentence to be impermissibly disparate from Chin's, even though the gap between their sentences increased at their resentencings.

## IV.

For these reasons, Cadden's sentence is **affirmed**.